In re Weiner MERCHANT, Debtor.

**ANDREWS UNIVERSITY,
Plaintiff–Appellant,**

v.

**Weiner MERCHANT, Defendant–
Appellee.**

**No. 90–1969.**

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 16, 1991.

Decided March 11, 1992.

Robert A. Yingst, Holly F. Underwood (argued and briefed), Boothby, Ziprick & Yingst, Berrien Springs, Mich., for plaintiff-appellant.

Weiner Merchant, pro se.

Before KEITH and NORRIS, Circuit Judges, and JOHNSTONE, District Judge.[*]

JOHNSTONE, District Judge.

Andrews University appeals from an order of the United States District Court for

---

[*] The Honorable Edward H. Johnstone, United States District Judge for the Western District of Kentucky, sitting by designation.

the Western District of Michigan holding in a chapter 7 bankruptcy proceeding that (1) an educational bank loan guaranteed by a private educational institution is dischargeable, (2) a private educational institution's extensions of credit for educational expenses are dischargeable, and (3) a prepetition creditor violates 11 U.S.C. § 362 by withholding the transcript of a debtor-student. For the reasons given, the order of the district court is reversed in part and affirmed in part.

## I.

Weiner Merchant, a citizen of Great Britain, came to the United States to attend Andrews University. Merchant received a loan from Michigan National Bank to pay a portion of her educational expenses. The Bank made the loan in connection with a student loan program arranged with the University. The program included a provision to give the Bank full recourse against the University in the event a student defaults on the debt.

In addition to the Bank loan, Merchant received assistance for educational expenses which are evidenced by promissory notes payable to the University.

After graduation, Merchant defaulted on both her obligations to the Bank and the University. The University, pursuant to the guaranty agreement, paid the Bank, took assignment of the note, and became the sole student loan creditor for Merchant's educational expenses.

One year after graduation, faced with $28,892.40 in debts, of which $23,614.00 was attributable to these educational loans, Merchant filed a chapter 7 bankruptcy. Soon thereafter, in an effort to gain citizenship, Merchant asked the University for a copy of her academic transcript. When her request was refused she filed an adversary proceeding against the University claiming its refusal violated the automatic stay provision, 11 U.S.C. § 362(a). The University claimed that both the educational loan and

credit extensions are excepted from discharge under 11 U.S.C. § 523(a)(8) and thus it had a right to withhold the transcript.

The bankruptcy court held that neither the Bank loan nor the extensions of credit fall within the exceptions to discharge under 11 U.S.C. § 523(a)(8) and that the University violated 11 U.S.C. § 362(a) by withholding the transcript. On appeal, the district court affirmed.

Three issues are raised in this appeal. First, whether educational loans, made by commercial lenders and guaranteed by private educational institutions, are dischargeable under 11 U.S.C. § 523(a)(8). Next, whether extensions of credit for educational expenses are dischargeable under 11 U.S.C. § 523(a)(8). Finally, whether a school may withhold the transcript of a student who has defaulted on educational loans and filed for bankruptcy under chapter 7.

## II.

Under *In re Vause*, 886 F.2d 794, 798 (6th Cir.1989), the court applies a *de novo* standard of review in determining Congress' intent when enacting 11 U.S.C. § 523(a)(8). This statute provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt—

.     .     .     .     .

(8) for an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution.... [1]

To ascertain the Congressional intent we review the language of the statute together with the design and policy underlying the overall statutory scheme. *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291, 108 S.Ct. 1811, 1817, 100 L.Ed.2d 313 (1988); *Crandon v. United States*, 494

---

1. The statute was amended November 29, 1990. The following language was added, "or for an obligation to repay funds received as an educational benefit, scholarship, or stipend...."

While this section is not to be considered with cases commenced before November 29, 1990, it does strengthen the court's interpretation of Congress' intent.

U.S. 152, 110 S.Ct. 997, 1001, 108 L.Ed.2d 132 (1990).

The Bankruptcy Code was drafted to provide a discharge procedure that enables insolvent debtors the ability to reorder their affairs and enjoy "a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." *Grogan v. Garner,* —— U.S. ——, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991) (quoting *Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934)). Congress elected to exclude certain obligations from the general policy of discharge based upon the conclusion that the public policy in issue, availability and solvency of educational loan programs for students, outweighs the debtor's need for a fresh start.

The legislative history of the 11 U.S.C. § 523(a)(8) teaches us that the exclusion of educational loans from the discharge provisions was designed to remedy an abuse by students who, immediately upon graduation, filed petition for bankruptcy and obtained a discharge of their educational loans. This was due to the fact that unlike commercial transactions where credit is extended based on the debtor's collateral, income, and credit rating, student loans are generally unsecured and based solely upon the belief that the student-debtor will have sufficient income to service the debt following graduation. *See* H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 466–75 *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787.

As stated by Senator DeConcini on the floor of the Senate:

> Section 523(a)(8) represents a compromise between the House bill and the Senate amendment regarding educational loans. This provision is broader than current law which is limited to federally insured loans. Only educational loans owing to a governmental unit or a nonprofit institution of higher education are made non-dischargeable under this paragraph.
> 124 Cong.Rec. S33998 (daily ed. Oct. 5, 1978) (statement of Sen. DeConcini).

Thus, Congress decided that many student loans should not be dischargeable in bankruptcy. With this background we turn to examine the statutory language addressed in the issues raised on this appeal.

## A.

■ The district court correctly found that (1) the University is a nonprofit institution, and (2) a student loan program existed between the University and the Bank. However, we reject its finding that the University did not "fund in whole or in part" an educational bank loan.

The district court reasoned that a nonprofit institution *funds* an educational bank loan when they agree to purchase *every* loan and that the University did not *fund* the educational loan because it purchased such loans only in the event of default. We are of the opinion that this narrow construction of the discharge provision failed to give proper weight to the design and policy underlying the overall statutory scheme of the educational loan exception to discharge.

In summary, the University, a nonprofit educational institution, processed and submitted Merchant's student loan application to the Bank. Upon default, the Bank had full recourse against the University for the balance due on the note. The University's participation in the student loan program was crucial to Merchant receiving money to fund a portion of her education. We hold that Merchant's obligation to the Bank was funded, in part, by the University and that the loan is not dischargeable under 11 U.S.C. § 523(a)(8).

## B.

■ The district court found that credit extensions in favor of Merchant as evidenced by the promissory notes payable to the University were beyond the scope of the definition of a "loan" as found in 11 U.S.C. § 523(a)(8). We disagree.

The term "loan" is not defined in the Bankruptcy Code; therefore, the court must infer that Congress intended for the term "loan" to be construed in accordance with its established meaning. *NLRB v.*

*Amax Coal Co.,* 453 U.S. 322, 329, 101 S.Ct. 2789, 2793, 69 L.Ed.2d 672 (1981). While this Circuit has not defined the term "loan" other circuits have adopted the following definition:

> [A] contract whereby, in substance one party transfers to the other a sum of money which that other agrees to repay absolutely, together with such additional sums as may be agreed upon for its use. If such be the intent of the parties, the transaction will be considered a loan without regard to its form.

*In re Grand Union Co.,* 219 F. 353 (2nd Cir.1914). *See also United States Dept. of Health and Human Services v. Smith,* 807 F.2d 122, 124 (8th Cir.1986); *United Virginia Corp. v. Aetna Casualty and Surety Co.,* 624 F.2d 814, 816 (4th Cir.1980); *Calcasieu–Marine Natl. Bank v. American Employer's Insurance Co.,* 533 F.2d 290, 296–7 (5th Cir.1976) (using Grand Union's "classic definition of a loan").

Notwithstanding this broad definition, both the district court and the bankruptcy court determined that the University's credit extension was not within the 11 U.S.C. § 523(a)(8) exception to discharge.

The district and bankruptcy courts rejected the reasoning of *In re Hill,* 44 B.R. 645 (Bankr.D.Mass.1984). The *Hill* court found that the term "loan" under section 523(a)(8) included extensions of credit when the following factors are present: (1) the student was aware of the credit extension and acknowledges the money owed; (2) the amount owed was liquidated; and (3) the extended credit was defined as "a sum of money due to a person". We find the *Hill* analysis persuasive.[2]

In this case Merchant signed forms evidencing the amount of her indebtedness before she registered for classes. She received her education from the University by agreeing to pay these sums of money owed for educational expenses after graduation. The credit extensions were loans for educational expenses.

**2.** This is further supported by *In re Shipman,* 33 B.R. 80 (Bankr.W.D.Mo.1983), which held that the "central issue in determining dischargeabili-

Following the *Hill* analysis we hold the credit extensions are not dischargeable under 11 U.S.C. § 523(a)(8).

### C.

The final issue presented in this appeal is whether in refusing to provide a student-debtor their educational transcript because they are in default on a prepetition debt, a school violates the automatic stay provision, 11 U.S.C. § 362. This section states:

> (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of ... (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case....

We held in *In re Smith,* 876 F.2d 524 (6th Cir.1989), that this provision was to be broadly interpreted and that it is self executing. Thus it automatically takes effect when a petition is filed in bankruptcy.

Various courts have found that the withholding of a debtor's transcript or the refusal to issue a transcript until a debtor pays a prepetition debt is an act to collect, assess, or recover a prepetition debt and thus a violation of section 362(a)(6). *See In re Gustafson,* 111 B.R. 282 (Bankr. 9th Cir.1990), *rev'd. on other grounds* 934 F.2d 216 (9th Cir.1991); *In re Watson,* 78 B.R. 232 (9th Cir.BAP 1987) (creditor may proceed with an action to hold its debt nondischargeable without violating 362 and, after a finding of non-dischargeability, may attempt to collect the debt); *In Re Parham,* 56 B.R. 531 (Bankr.E.D.Va.1986); *In re Reese,* 38 B.R. 681 (Bankr.N.D.Ga.1984); *In Re Ware,* 9 B.R. 24 (Bankr.W.D.Mo. 1981); *In re Heath,* 3 B.R. 351 (Bankr. N.D.Ill.1980); *In re Howren,* 10 B.R. 303 (Bankr.D.Kan.1980).

We follow the reasoning of these decisions and hold a violation of 11 U.S.C. § 362(a) arises when a prepetition creditor withholds a student-debtor's transcript.

ty is whether the funds were for educational purposes, not whether the funds constituted a loan."

Given this determination, we must now determine if Congress made it an exception to the automatic stay provision.

 Section 362(b) sets forth the exceptions. While many of the exceptions to discharge found in 11 U.S.C. § 523 are exceptions from the automatic stay found in 11 U.S.C. § 362(b), educational loans are not. Thus, the automatic stay applies to creditors of education loans and remains in effect until (1) the case is closed, (2) the case is dismissed, or (3) a discharge is granted or denied. 11 U.S.C. § 362(c)(2)(C).

Merchant filed a petition for bankruptcy under chapter 7 and later the University failed to turn over her transcript. Although there is a presumption that the educational debts are not dischargeable, as stated above, they are not listed within the exceptions to the automatic stay found in 362(b). Accordingly, the University violated section 362(a). Having found the student loan debt excepted from discharge, the stay will terminate when the district court enters an order consistent with this opinion. *See* 11 U.S.C. § 362(c)(2)(C).

We affirm the Bankruptcy Court and District Court in finding the University in violation of 11 U.S.C. § 362(a)(6). As the violation was not willful, sanctions are not merited.

### CONCLUSION

In summary, Congress enacted 11 U.S.C. § 523(a)(8) in an effort to prevent abuses in and protect the solvency of the educational loan programs. The transactions in issue here were educational loans funded in whole and in part by Andrews University, a nonprofit educational institution. The financial assistance programs made possible by the University enabled Merchant to obtain an education which she might otherwise have been denied. Congress, by excepting educational loans from discharge, has determined that the continued solvency of educational funding and financial aid programs override the need to provide debtor's with a fresh start in their financial affairs. Congress, however, has not excepted educational loans from the automatic stay provision.

Accordingly, the judgment of the district court holding the indebtedness dischargeable is reversed. The judgment of the district court refusing to hold the appellant in contempt is affirmed. This case is remanded to the district court for entry of judgment in compliance with this opinion.