In re Melissa N. JOYNER, Debtor.

### STEVENS INSTITUTE OF TECHNOLOGY, Plaintiff,

v.

### Melissa N. JOYNER, Defendant.

**Bankruptcy No. 94–11797DAS. Adv. No. 94–0481DAS.**

United States Bankruptcy Court, E.D. Pennsylvania.

Aug. 16, 1994.

Allan K. Marshall, Philadelphia, PA, for debtor.

Kenneth F. Carobus, Philadelphia, PA, for Stevens Institute of Technology.

Ronnie Schwartz Albright, Trustee, Philadelphia, PA.

Frederic Baker, Asst. U.S. Atty., Philadelphia, PA.

*FINAL
ADJUDICATION/MEMORANDUM*

DAVID A. SCHOLL, Chief Judge.

## A. DISCUSSION

In an Order dated August 10, 1994, this court determined that the student loan obligation of MELISSA N. JOYNER, the Debtor–Defendant in this proceeding ("the Debtor"), was not dischargeable in accordance with § 523(a)(8)(B), because the Debtor was not entitled to relief pursuant to the "undue hardship" exception to that provision. We did provide that she could receive a copy of the transcript of her grades received while she was a student at the Plaintiff, STEVENS INSTITUTE OF TECHNOLOGY ("Stevens"), for use in connection with her impending admission to Drexel University upon payment of only $300 of her potential $10,-145.74 student loan obligation. However, we expressly reserved judgment as to whether that portion of the loan used to pay room and board, determined to be $1,650, was nondischargeable as an "obligation to repay funds received as an education benefit, scholarship or stipend," without further research and consideration on our part.

The disposition of this issue turns on whether sums lent by a school to one of its students for campus housing and a meal plan is excepted from discharge under·§ 523(a)(8). That Bankruptcy Code section presently provides as follows:

> (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—
>
> (8) *for an educational benefit overpayment or loan* made, insured or guaranteed by a governmental unit, or made under any program funded in whole or part by a governmental unit or nonprofit institution, *or for an obligation to repay funds re-ceived as an educational benefit,* scholarship or stipend....

11 U.S.C. § 523(a)(8) (emphasis added).

We believe that our discussion in *In re Najafi*, 154 B.R. 185, 188–90 (Bankr.E.D.Pa. 1993), resolves this issue. Although we allowed there that the unusual punctuation (or lack thereof) in § 523(a)(8) renders that section something less than a model of clarity, we concluded that

> as [*In re*] *Pelkowski*, [990 F.2d 737,] ... 742–44 (3d Cir.1993) ], teaches, ... there is no support for the ... contention, ..., that § 523(a)(8) must be read narrowly. We believe that, when reading the Code section ... broadly ..., the terms "benefit," "overpayment," and "loan" should be construed as a series of nouns, all modified by the adjective "educational."

We conclude that the portion of Stevens' loan to the Debtor attributable to room and board while attending that institution were conferred as an "educational benefit" to the Debtor within the scope of § 523(a)(8).

There is somewhat relevant case law, although we also believe that the 1990 amendment to § 523(a)(8), *see Najafi, supra*, 154 B.R. at 189, which post-dated the cases cited hereinafter, greatly strengthens Stevens' position.

Based on this case law, courts should first determine the purpose of the loan in order to answer the question raised. A test for determining the purpose of a potential student loan was first articulated by the court in *In re Shipman*, 33 B.R. 80 (Bankr.W.D.Mo. 1983). In that case, the court was asked to determine if work study advances were nondischargeable student loans under an earlier version of § 523(a)(8). *Id.* at 81. Therefore, the court's discussion focused on what constituted a "loan" for the purposes of § 523(a)(8). On this general issue, the court's conclusion is quite broad. "The central issue in determining dischargeability is whether the funds were for educational purposes, not whether the funds constituted a loan." *Id.* at 82. The court concluded, however, that the work study advances in issue were not for educational purposes because, *inter alia*, (1) the Debtor expressly affirmed her sole obligation

to pay her own tuition; and (2) she used the work study advances to pay her "rent and other living expenses." *Id.* Thus, the *Shipman* court suggested that, unless the funds are used to pay tuition, the underlying loan was not an "educational loan." The fact that the funds were used to defray ordinary living expenses so that the debtor might attend school did not, in the court's mind, require a contrary result.

In *In re Vretis*, 56 B.R. 156 (Bankr. M.D.Fla.1985), the court came to a conclusion which is the opposite from that of the *Shipman* court, although the two cases are factually similar and they come to the same conclusion regarding the definition of "loan." In *Vretis*, the debtor received an educational award for his medical studies at the Texas College of Osteopathic Medicine. *Id.* at 156. The award consisted of a stipend of $6,750 and an additional $710.20 to be used for tuition and fees. *Id.* The debtor sought to discharge the debt, asserting that it was not an educational loan. *Id.* at 157. The court cited *Shipman* and its "educational purposes" test as the proper starting point of its analysis. *Id.* However, after reviewing the *Shipman* court's reasons for concluding that the work study advances at issue there did not constitute educational loans, the court stated:

> The case at hand materially differs from *Shipman* in that the award given by the Health Services Corps was designed for tuition and educational purposes. Although the stipend given to support debtor while enrolled in academic training was probably used for rent and living expenses just as the debtor in *Shipman* used her monies for rent and living expenses, the initial characterization of the loan is what controls. The stipend given the debtor was designated as monies to support debtor while engaged in academic training since the training consumed all of debtor's time without leaving any free time in which to work. . . . Clearly, this award was an educational loan within the meaning of Section 523.

*Id.*

Although the *Vretis* court's conclusion seems justified, it is hard to distinguish it from the *Shipman* case unless one concludes that the *Shipman* case was wrongly decided.

One other pre–1990 case of relevance is *In re Ealy*, 78 B.R. 897 (Bankr.C.D.Ill.1987). In that case, a debtor decided to return to school after a short work hiatus. *Id.* at 898. The debtor's tuition and costs were financed directly by his school under a federal assistance program. *Id.* The debtor also obtained a guaranteed student loan in the amount of $2,500 from a bank, which he used to purchase a truck, pay off his wife's car loan, and for other miscellaneous expenses. *Id.* at 897–98. The debtor sought to discharge the loan on the ground of "undue hardship." *Id.* at 898. Before addressing the "hardship" issue, the court noted that bank had the initial burden of proving that the loan was a student loan. *Id.* Citing to the *Shipman* "educational purposes" test, the court concluded that the loan was not an educational loan because the bank did not rebut the debtor's testimony that he did not use the loan proceeds for educational purposes. *Id.*

In synthesizing the above cases, we conclude that, under the pre–1990 version of § 523(a)(8), there were two different interpretations or applications of the "educational purposes" test. The *Shipman* and *Ealy* courts looked to see if the *proceeds* of the loan were used for educational purposes. The *Vretis* court, on the other hand, looked to see if the *loan* itself was awarded for educational purposes.

Our reasoning in *Najafi*, which notes the significance of the broadened definition of obligations within the scope of amended § 523(a)(8), supports the reasoning of the *Vretis* court. We find that, if the inquiry is upon whether the student receives an "educational benefit" from a loan, it should not matter whether the money is used for tuition or other living expenses. Both are part of the "educational benefit" sought by the student. Under the guaranteed student loan program, for example, the loan proceeds may apparently be used by the student to pay for tuition, room and board, books, student fees, or any other expenses incidental to education. All of these expenses serve the student's "educational benefit," and lenders and

the government do not make distinctions between the uses of proceeds when awarding such loans. Hence, we conclude that room and board expenses are funds received by the Debtor which conferred an "educational benefit" and are therefore nondischargeable.

We are therefore now prepared to enter an Order declaring the Debtor's entire loan obligation to Stevens nondischargeable, observing that the adverse impact of this decision upon the Debtor is offset by our allowing her to obtain her transcripts to forward to Drexel University upon payment of the relatively small sum of $300.

### B. ORDER

AND NOW, this 16th day of August, 1994, after trial of this proceeding of August 9, 1994, supplementing our Partial Adjudication and Order of August 10, 1994, which shall remain in full force and effect where not inconsistent herewith, it is hereby

ORDERED AND DECREED that the Debtor's entire indebtedness of $10,145.74 owed to Stevens is declared nondischargeable.