**In re Michael David FEYES and Sandra Lynn Feyes, Debtors.**

**Michael David Feyes, Plaintiff,**

**v.**

**Spring Arbor College, Defendant.**

**Bankruptcy No. 98–3060.**
**Related No. 97–34360.**

United States Bankruptcy Court,
N.D. Ohio.

Sept. 23, 1998.

Alan D. Mikesell, Maumee, OH, for plaintiff.

Jeffrey K. Vandervoort, Mary Anne Whipple, Toledo, OH, for defendant.

## MEMORANDUM OPINION AND DECISION

RICHARD L. SPEER, Chief Judge.

This cause comes before the Court upon the parties' respective Motions for Summary Judgment and Replies. This Court has reviewed the arguments of counsel, exhibits, and the entire record of the case. Based upon that review, and for the following reasons, the Court finds that Plaintiff's debt to Defendant is Dischargeable.

### FACTS

Along with its Motion for Summary Judgment, the Plaintiff has provided the Affidavit of Nancy VandeKieft, who was employed as "Administrative Assistant, Admissions— Adult Services" at Defendant, Spring Arbor College, (hereafter "Spring Arbor"). The following facts which follow are taken from this affidavit.

Spring Arbor is a four year liberal arts college with its main campus located in Spring Arbor, Michigan. Plaintiff, Michael Feyes, enrolled and began classes at Spring Arbor on May 23, 1994. Pursuant to Spring Arbor's enrollment process, Mr. Feyes attended an orientation-like "convocation" meeting on the first night of class. At the meeting, Mr. Feyes completed a document entitled "Payment Plan Worksheet." This worksheet detailed the charges and estimated assistance for Mr. Feyes' first two semesters. These charges total Four Thousand Eight Hundred Eighty-nine Dollars ($4,889.00) for the first semester, and Four Thousand Two Hundred Ninety-one Dollars ($4,291.00) for the second. The worksheet also contains boxes wherein Mr. Feyes was to choose either a monthly payment plan, or a semester payment plan. Mr. Feyes checked neither. The worksheet also contained the following language at the bottom, "I understand that I am responsible for all tuition, books, and fees *not* covered by financial assistance." Mr. Feyes signed and dated the worksheet in the provided spaces.

Mr. Feyes subsequently withdrew from classes in the spring semester of 1994. He then enrolled and participated in classes in the fall semester of 1994. Mr. Feyes again enrolled in classes in the fall semester of 1995. Consequently, Mr. Feyes was charged for the tuition and related expenses for that semester, totaling Four Thousand Three Hundred Seventy-five Dollars ($4,375.00). It is these fees which remain unpaid and are at issue in this case. As Ms. VandeKieft continues to explain in her affidavit:

Spring Arbor College does not require full payment before enrollment or commencement of classes where the Payment Plan Worksheet is previously signed, as in Mr. Feyes's case. Often times, the full extent of financial aid available and payable from other sources is not known and/or paid until later, and Spring Arbor extends credit to students to permit enrollment and participation in classes pending payment from other sources, when available, or from the student's own resources. This was the situation for Mr. Feyes with respect to expenses incurred for the semesters prior to Fall 1995.

Mr. Feyes brought the present adversary proceeding seeking a determination of the dischargeability of the Fall 1995 fees under § 523(a)(8) of the Bankruptcy Code.

### STATUTE

The Bankruptcy Code, Title 11 of the United States Code, provides in pertinent part:

**11 U.S.C. § 523. Exceptions to Discharge**

(a) A discharge under section 727, 1141, 1228[a] 1228(b), or 1328(b) of this section does not discharge an individual debtor from any debt—

(8) for an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or a nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship, or stipend, unless—

(A) such loan, benefit, scholarship, or stipend overpayment first came due before more than 7 years (exclusive of any applicable suspension of the re-

payment period) before the date of the filing of the petition; or

(B) excepting such debt from discharge under this paragraph will impose undue hardship on the debtor and the debtor's dependents.

## DISCUSSION

Determinations as to the dischargeability of particular debts are core proceedings pursuant to 28 U.S.C. § 157. Thus, this case is a core proceeding.

This cause comes before the Court upon the parties' respective Motions for Summary Judgment and Replies. A movant will prevail on a Motion for Summary Judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986), Fed.R.Civ.P. 56(c), Fed. R.Bankr.P. 7056. In order to prevail, the movant must demonstrate all elements of the cause of action. *R.E. Cruise, Inc. v. Bruggeman*, 508 F.2d 415, 416 (6th Cir.1975). Thereafter, the opposing party must set forth specific facts showing there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Inferences drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion. *Matsushita v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). See also *In re Bell*, 181 B.R. 311 (Bankr.N.D.Ohio 1995).

As, Defendant contends, *In re Merchant*, 958 F.2d 738 (6th Cir.1992) is the controlling law in this case. In *Merchant*, the issue before the Court was whether credit extensions in favor of the debtor as evidenced by promissory notes payable to a university were beyond the scope of "loan" as the term is used in § 523(a)(8) of the Bankruptcy Code. The Court explained and held:

The term "loan" is not defined in the Bankruptcy Code; therefore, the court must infer that Congress intended for the term "loan" to be construed in the accordance with its established meaning. *NLRB v. Amax Coal Co.*, 453 U.S. 322, 329, 101 S.Ct. 2789, 2793, 69 L.Ed.2d 672 (1981). While this Circuit has not defined the term "loan" other circuits have adopted the following definition:

[A] contract whereby, in substance one party transfers to the other party a sum of money which that other agrees to repay absolutely, together with such additional sums as may be agreed upon for its use. If such be the intent of the parties, the transaction will be considered a loan without regard to its form.

*In re Grand Union Co.*, 219 F. 353 (2nd Cir.1914). See also *United States Dept. of Health and Human Services v. Smith*, 807 F.2d 122, 124 (8th Cir.1986); *Calcasieu–Marine National Bank of Lake Charles v. American Employers' Insurance Co.*, 533 F.2d 290, 296–97 (5th Cir.1976) (using *Grand Union's* "classic definition of a loan").

Notwithstanding this broad definition, both the district court and the bankruptcy court determined that the University's credit extension was not within the 11 U.S.C. § 523(a)(8) exception to discharge.

The district court and bankruptcy courts rejected the reasoning of *In re Hill*, 44 B.R. 645 (Bankr.D.Mass.1984). The *Hill* court found that the term "loan" under section 523(a)(8) included extensions of credit when the following factors are present: (1) the student was aware of the credit extension and acknowledges the money owed; (2) the amount owed was liquidated; and (3) the extended credit was defined as "a sum of money due to a person". We find the *Hill* analysis persuasive.[FN2]

[FN2] This is further supported by *In re Shipman*, 33 B.R. 80 (Bankr.W.D.Mo. 1983), which held that the "central issue in determining dischargeability is whether the funds were for educational purposes, not whether the funds constituted a loan."

In this case [the debtor] signed forms evidencing the amount of her indebtedness before she registered for classes. She re-

ceived her education from the University by agreeing to pay these sums of money owed for educational expenses after graduation. The credit extensions were loans for educational expenses.

Following the *Hill* analysis we hold the credit extensions are not dischargeable under 11 U.S.C. § 523(a)(8).

958 F.2d at 740–741.

Mr. Feyes makes two arguments that the debt at issue is dischargeable. First, he argues that Spring Arbor is not a nonprofit institution. However, along with its reply Spring Arbor attached proof of certification as a nonprofit corporation, refuting this argument. Mr. Feyes second and primary argument focuses on the fact that there was no promissory note signed in this case. Indeed, even the worksheet upon which Spring Arbor relies only related to 1994 tuition and fees, not the 1995 charges that are at issue in this case.

Applying *Merchant*, this Court finds that the debt at issue was not a "loan" as the term was intended in § 523(a)(8). While the *Merchant* court noted the broad definition of the term, it nevertheless chose to articulate three factors to determine when an extension of credit is a "loan" per § 523(a)(8). One of those terms was that the amount owed should be liquidated. There is no indication in the record that there was an understanding of a liquidated amount between the parties as to the fees for the 1995 fall semester. Spring Arbor's worksheet does not detail tuition for this period. Had Spring Arbor been asserting a claim for the 1994 fees, perhaps the outcome would be different. However, there was no signed document or express agreement as to these particular fees. It is also important that in the *Merchant* court's holding, it stressed the fact that the debtor had signed forms evidencing the amount of her indebtedness, and that (like a regular student loan) she received her education by agreeing to pay these sums after graduation.

In its argument, Spring Arbor places great reliance on *In re Hill,* 44 B.R. 645 (Bankr. D.Mass.1984). It is true that the court in *Merchant* expressly followed *Hill* (though the factors articulated by the court in *Mer-*

*chant* were not expressly articulated in *Hill).* However, a close reading of *Hill* does not support Spring Arbor's position. In *Hill,* the student had been going through the registration process, but was told that he could not register for classes because his tuition was unpaid. He produced a loan application that had been initially approved by a bank, but was told this was insufficient. He relayed the situation to his ice hockey coach, who arranged that the debtor could register as a "R + 30", that is, his registration would be open for thirty days. After the thirty days expired, his status was "arranged." By the time his loan finally came through, the debtor had just been suspended from school on account of poor grades. The debtor then chose to use his loan proceeds at another institution. 44 B.R. at 646.

In holding that this was a "loan" pursuant to § 523(a)(8), it was important to the *Hill* court that:

> The debtor was well aware of the fact, and in fact acknowledged as he had to, that on registration he owed [the University] $2,500 for tuition. Indeed, until he was put on academic suspension, it was his intention to pay the University the proceeds of the [loan] when received. He was well aware of the terms of the loan. He was being extended credit, namely, the cost of tuition, without interest, to be paid as soon as he received the proceeds of his student loan. *The amount was certain.*

44 B.R. at 647 (emphasis added). Thus, it was the fact that there had been this express and particular arrangement between the university and the debtor as to this particular extension of credit that was important to the Court in *Hill.* The credit extension was arranged around waiting for the particular loan proceeds at issue in that case to be applied against the particular fees in that case. There was clearly an express, albeit oral, agreement as to this particular transaction. Finally, the amount of the fees was certain and expressly agreed upon.

In the case at bar, there is simply no indication in the record as to a particular arrangement as to the fall of 1995 fees. Again, were Spring Arbor pursing a claim for

the 1994 fees which were expressly acknowledged on the worksheet, perhaps the outcome would be different. However, it simply appears that by the fall of 1995 Spring Arbor was no longer making a specific "loan," but was simply letting Mr. Feyes incur indebtedness on a credit basis, to be repaid when he could. This situation is no different than that of other unsecured creditors. As the *Merchant* Court acknowledged, "Congress elected to exclude certain obligations from the general policy of discharge based upon the conclusion that the public policy in issue, availability and solvency of educational loan programs for students, outweighs the debtor's need for a fresh start." 958 F.2d at 740. There was simply no educational loan program at issue here. Rather, Spring Arbor simply chose not to charge for the services provided until after the services were rendered. If Congress had intended to make all debts for educational purposes nondischargeable, it could have done so. Instead, it chose only to exclude educational loans (or certain overpayments) from discharge.

There was yet another case cited by the Court in *Merchant* which needs to be mentioned. In footnote 2, the court cited *In re Shipman*, 33 B.R. 80 (Bankr.W.D.Mo.1983) for support and for the holding that the "central issue ... is whether the funds were for educational purposes, not whether the funds constituted a loan." A closer review of this case reveals that it also does not support Spring Arbor's position. First, the *Shipman* court noted that the exception to discharge for student loan debts was created in reaction to the millions of dollars being lost annually through the default and discharge of federally guaranteed student loans. *Id.* at 82. Thus, the portion of the sentence just before the portion quoted by the court in *Merchant* was, "[t]his direct link to the federal education statute is an excellent indication that the central issue ..." *Id.* In *Shipman*, the loan at issue originated from a work-study program with the Missouri Department of Mental Health. The court looked to the particular aspects of the particular loan, and found that it did not qualify as a "loan" per § 523(a)(8). *Id.* at 82.

Similarly, the debt at issue here does not relate to the type of educational "loan" intended to be within the scope of § 523(a)(8). Again, if Congress had wished to make all debts to institutions of higher education nondischargeable, it could have. Rather, Congress had something more particular in mind. It wished to insure the solvency of student loan programs. While it is also clear that Congress intended this protection to apply to any education loan program (not just federal ones, or they would have said that too), there is no such program at stake here. Spring Arbor simply let Mr. Feyes attend classes in the fall of 1995 without first paying for them. The rule articulated in *Merchant* requiring at least a liquidation of the credit extended, is among the more broad holdings on the issue. (See *In re Johnson*, 218 B.R. 449 (8th Cir. BAP 1998) for a review of various interpretations of the word "loan".) However, Spring Arbor's policy of allowing students to attend classes without signing any loan documentation pertaining to a liquidated amount (at least after their first year), is even beyond this broad scope. Indeed, the position Spring Arbor now advances would in effect give any educational debt to an educational institution blanket nondischargeability. This is simply not what Congress provided for in § 523(a)(8).

For all these reasons, this Court finds that the debt at issue is dischargeable. In reaching the conclusion found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

Accordingly, it is

**ORDERED** that Defendant Spring Arbor College's Motion for Summary Judgment be, and is hereby, *DENIED*, that Plaintiff Michael David Feyes' Motion for Summary Judgment be, and is hereby, *GRANTED*, and that it is hereby determined that the debt at issue be, and is hereby, *DIS-CHARGEABLE*.