### The COLLEGE OF SAINT ROSE, Plaintiff,

v.

### David W. REGNER, Defendant.

No. 98–CV–1090.

United States District Court, N.D. New York.

Feb. 4, 1999.

Office of Richard J. Miller, Albany, NY, for plaintiff.

Newell, Toomey Law Firm, Glens Falls, NY, for defendant, Michael J. Toomey, Rudolph J. Meola, of counsel.

## MEMORANDUM—DECISION & ORDER

McAVOY, Chief Judge.

Presently before the Court is an appeal by the College of St. Rose (the "College") from the decision of the Bankruptcy Court discharging tuition debts owed the College by Defendant David Regner ("Regner").

### I. BACKGROUND

Regner began his undergraduate studies with the College in the fall semester of 1991. Regner regularly paid his tuition, through various forms of financial aid and/or tuition assistance, until the fall semester of 1993. Regner enrolled for classes for the fall semester of 1993. Tuition charges for that

semester amounted to $4,721.00. Regner did not pay his tuition in full prior to the commencement of classes for the fall 1993 term. Despite the College's policy that all tuition be paid in full prior to the commencement of classes, Regner was permitted to attend classes.

In April 1994, the College realized that Regner had failed to process the proper paperwork necessary to receive financial aid. The College, therefore, sent Regner a letter dated April 20, 1994 stating that "[i]t is imperative that you contact the Business Office within the next ten days to make arrangements for the payment of your past due balance." Regner acknowledged that he owed money to the College, made some payments towards his outstanding tuition bill, but failed to pay his bill in full. Regner even signed a stipulation acknowledging his indebtedness to the College. Ultimately, the College obtained a default judgment in state court against Regner in the amount of $5,133.06.

On March 13, 1997, Regner filed for bankruptcy pursuant to Chapter 7, owing the College $4,719.93. On May 5, 1997, the College commenced a proceeding seeking a declaratory judgment that Regner's debt to the College was non-dischargeable pursuant to 11 U.S.C. § 523(a)(8). The College then filed a motion for summary judgment. The Bankruptcy Court issued a Memorandum—Decision and Order dated June 9, 1998 granting summary judgment in favor of Regner. The Bankruptcy Court concluded that § 523(a)(8) did not preclude the debt from being discharged because the College did not make a "loan" to Regner.

## II. DISCUSSION

■ The College of St. Rose appeals from the June 9, 1998 decision of the Bankruptcy Court. The College contends that the Bankruptcy Court identified the correct legal standard, but erroneously applied the facts of this case to that standard. Specifically, the College asserts that the Bankruptcy Court erroneously concluded that the College did not provide a "loan" to Regner by permitting him to attend classes without requiring prepayment of tuition in full.

The Bankruptcy Court's findings of fact are subject to a clearly erroneous standard and its legal conclusions are reviewed *de novo*. *Momentum Mfg. Corp. v. Employee Creditors Comm.*, 25 F.3d 1132, ·1136 (2d Cir.1994). With this standard in mind, the Court will address the College's contentions.

The relevant section of the Bankruptcy Code is found at 11 U.S.C. § 523(a)(8) and provides, in relevant part, that:

A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend.

The plain and unambiguous terms of the statute identify three situations under which a loan is not dischargeable: (1) educational benefit overpayments; (2)loans; and (3) obligations to repay funds received." 11 U.S.C. § 523(a)(8); *see In re Coole*, 202 B.R. 518, 519 (Bankr.D.N.M.1996). The Bankruptcy Court correctly concluded, and the College does not contest, that the debt here is not an education benefit overpayment. "Educational benefit overpayment occurs in programs like the GI Bill, where students receive periodic payments upon their certification that they are attending school. When a student receives funds but is not in school, this is an educational benefit overpayment." *Coole*, 202 B.R. at 519. Here, as the Bankruptcy Court found, "no funds passed from St. Rose to the Debtor." For similar reasons, the present matter does not involve an obligation to repay funds received. Again, at no time did Regner receive funds. Thus, the sole issue is whether there exists a "loan" that is not dischargeable under the Bankruptcy Code.

This is not the first time a student has attended classes without paying his tuition and subsequently filed for bankruptcy; this issue has been addressed by numerous courts. Of all the cases reviewed, most hold

that a loan situation is not established merely because a school permits a student to attend classes without requiring prepayment of tuition. *See In re Van Ess,* 186 B.R. 375 (Bankr.D.N.J.1994); *In re Peller,* 184 B.R. 663 (Bankr.D.N.J.1994); *In re Coole,* 202 B.R. 518 (Bankr.D.N.M.1996); *In re Nelson,* 188 B.R. 32 (D.S.D.1995), *but see In re Hill,* 44 B.R. 645 (Bankr.D.Mass.1994); *In re Merchant,* 958 F.2d 738 (6th Cir.1992). This Court agrees with the Bankruptcy Court here and those cases that have found that, under circumstances similar to those here, the debt is dischargeable. The recent decision in *In re DePasquale,* 225 B.R. 830 (1st Cir. BAP 1998), does not require a different result because the facts of this case do not evidence "a contemporaneous, mutual understanding of future repayment." *Id.* at 833.

In *Merchant,* the Sixth Circuit stated that "the term 'loan' under section 523(a)(8) included extensions of credit when the following factors are present: (1) the student was aware of the credit extension and acknowledges the money owed; (2) the amount owed was liquidated; and (3) the extended credit was defined as a 'sum of money due a person'". *Merchant,* 958 F.2d at 741 (citing *Hill,* 44 B.R. 645). Even if the Court accepted this test as controlling, the Bankruptcy Court correctly concluded that the debt was dischargeable because there is no evidence that Regner was aware of a credit extension and acknowledged the money owed.

The evidence in the record demonstrates that there was no exchange of funds, there was no agreement between the College and Regner regarding an extension of credit, and Regner did not execute a promissory note. Rather, the College merely acquiesced in Regner's failure to prepay tuition. The fact that Regner later acknowledged that he failed to pay his tuition obligations does not require a different result. Further, this was not an isolated incident where the College specifically permitted Regner to attend classes without fully paying his tuition; the College concedes that this is its regular practice. At most, the College unilaterally understood that Regner's tuition would be paid by financial aid or that Regner would himself be responsible.

The present matter is readily distinguishable from *Merchant* because, in that case, the debtor signed forms evidencing her indebtedness *before* she registered for classes. Specifically, the debtor in *Merchant* executed promissory notes payable to the University. *Hill* is arguably distinguishable because the debtor was well aware at the time of registration that the school was extending him credit in the amount of one semester's tuition. Here, there is no evidence suggesting that the College was providing Regner with special treatment by way of a credit and Regner did not acknowledge his debt until after the fall 1993 semester had ended.

"There is no overriding policy that warrants treatment [of schools] differently from any other creditor ... To read § 523(a)(8) as encompassing the mere non-payment of tuition requires an overly broad reading of the statute and is unsupported by the legislative history." *Van Ess,* 186 B.R. at 379. "[R]eading the statute to include ... tuition ... would extend the meaning of a loan or extension of credit beyond that contemplated by Congress. Congress intended to preclude the abuse of the bankruptcy process as a means for students to discharge loans immediately or soon after graduation. The statute does not provide for the nondischargeability of any type of [school's] services, but is limited to the extension of credit or a loan." *Peller,* 184 B.R. at 669.

### III. CONCLUSION

For the foregoing reasons, the decision of the Bankruptcy Court is AFFIRMED.

**IT IS SO ORDERED.**