**In re Alfred NAVARRO Debtor.**

**Alfred Navarro, Plaintiff,**

v.

**University of Redlands, Defendant.**

**Bankruptcy No. RS9719210MJ.**
**Adversary No. RS021151MJ.**

United States Bankruptcy Court,
C.D. California,
Riverside Division.

Oct. 15, 2002.

Gary L. Kaplan, Law Offices of Gary L. Kaplan, for defendant.

Todd Turoci, Turoci Firm, Ontario, CA, for plaintiff.

## MEMORANDUM OF DECISION RE: DISCHARGEABILITY OF STUDENT TUITION ACCOUNT

MEREDITH A. JURY, Bankruptcy Judge.

Chapter 7 debtor, Albert Navarro ("Navarro") brought an adversary proceeding against The University of Redlands ("University"), seeking a determination that the debt he owed to University for unpaid tuition was discharged in his Chapter 7 case. On September 5, 2002, this matter came on for trial to determine the dischargeability pursuant to 11 U.S.C. § 523(a)(8) of the debt incurred by Navarro for unpaid tuition to the University, the Honorable Meredith A. Jury presiding.

Todd Turoci of The Turoci Firm appeared on behalf of Navarro, and Gary L. Kaplan, of the Law Offices of Gary L. Kaplan, appeared on behalf of the University. The Court, after considering the arguments presented in open court, as well as supplemental exhibits tendered by the University, submitted the matter for decision.

After due consideration, this court rules that the debt was dischargeable based on the language in the documents presented. The exhibits presented only addressed fees and tuition as being the sole responsibility of the student for prompt payment, to be paid when they became due, and set forth a consequence if not paid. They did not create a "loan" within the meaning of the discharge exception. Accordingly, the debt is discharged.

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding under 28 U.S.C. § 157(b).

## II. FACTS AND BACKGROUND

In lieu of testimony at trial, the parties stipulated to material undisputed facts and exhibits. On May 2, 1994, Navarro registered for classes at the University, a California non-profit institution. As part of his initial registration, he signed a Registration and Tuition Agreement and a Refund Policy and Tuition Liability Schedule. Approximately one year later he also signed a Deferred Payment Request. Per those documents, Navarro agreed to pay for classes he attended at University. Navarro ceased attending the University in May, 1996, but owed tuition in the amount of $5,465.20.

The Parties stipulated that the money owed was not for a loan made, insured or guaranteed by a governmental unit nor was the money for a loan made under any program funded in whole or in part by a governmental unit. They also agreed that University did not pay any money to or on behalf of Navarro, nor did Navarro receive an educational stipend or scholarship from the University.

On December 12, 1996, University filed suit against Navarro in the Municipal Court of San Bernardino, Central Judicial District, to collect on the unpaid tuition debt ("State Court Action"). On May 22, 1997, Navarro filed for Chapter 7 bankruptcy protection. The University was scheduled as an unsecured creditor and received notice of the bankruptcy filing.

On September 4, 1997, Navarro received his discharge and the case was subsequently closed. On October 10, 1997, the University took a default judgment in the State Court Action against Navarro in the amount of $6,786.72 (including interest, court costs and attorneys' fees). The judgment was recorded, and in September, 2001, an Earnings Withholding Order was issued and served on Navarro's employer. By stipulation, this order was stayed. The parties agree that if the debt is not exempt from discharge under § 523(a)(8), then it was discharged in his bankruptcy case and the judgment has no force and effect.

On March 26, 2002, Navarro moved to reopen his bankruptcy case to commence this Adversary Proceeding against the University to determine the dischargeability of the debt owed to the University.

## III. DISCUSSION

*A. 11 U.S.C. § 523(a)(8)*

■ The purpose of 11 U.S.C. § 523(a)(8) is to exclude from the discharge normally granted to debtors certain debts arising from educational loans. Sec-

tion 523(a)(8) provides in relevant part that:

> (a) a discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>
>> (8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend.

11 U.S.C. § 523(a)(8).

Congress enacted § 523(a)(8) because there was evidence of increasing abuse of the bankruptcy process, threatening the viability of educational loan programs and harm to future students as well as taxpayers. Congress recognized that this is an instance where a creditor's interest in receiving full payment of the debt outweighs the debtor's interest in a fresh start. *In re Renshaw*, 222 F.3d 82 (2nd Cir.2000); *In re Johnson*, 218 B.R. 449, 451–455 (8th Cir. BAP 1998); *In re Merchant*, 958 F.2d 738 (6th Cir.1992).

### B. The Documents Executed by Navarro

Through the two documents executed by Navarro in 1994, the Registration and Tuition Agreement ("Agreement"), and the Refund Policy/Tuition Liability and Refund Schedule ("Refund/Liability Schedule"), along with the Deferred Payment Request ("Deferred Payment Request") executed in 1995, Navarro admits he agreed he would be liable for tuition incurred However, he asserts he did not agree to repay a sum certain, in the future, as required for a loan.

The Agreement required basic personal information and directed students to mark the program in which they were enrolling. The Agreement stated that tuition was set at $318.00 per credit hour and that "[f]ees and tuition are due at the beginning of each semester, and the student is solely responsible for prompt payment." It further stated that "I have read and understood the above and agree to make tuition and fee payments as they come due." It also informed the student that the University reserved the right to withhold services from or dismiss any student whose account became delinquent. Navarro signed the Agreement on May 2, 1994.

The Refund/Liability Schedule provided Navarro with information regarding the University's tuition refund schedule and outlined his tuition liabilities if he were to commence classes at the University but not finish them in any given semester. Navarro signed this document on May 2, 1994.

On April 25, 1995, Navarro executed a Deferred Payment Request, which required basic information and contained a section in which Navarro checked off the program wherein he was requesting paid educational benefits of tuition/fees. The pertinent language of the Deferred Payment Request included, "I understand that I am solely liable for payment of all tuition and fees regardless of any educational benefits to which I may be entitled" and "I understand that if payment in full is not made within 45 days of the end of each course, the University of Redlands: (1) will not allow me to attend or enroll in subsequent classes until full payment has been made; and (2) will not release a diploma or an official transcript until payment in full has been made."

### C. Definition of a Loan

█ Case law in this area is diverse. All cases agree that "loan" is not defined in the Bankruptcy Code or Rules as it

relates to § 523(a)(8). Thus the term is interpreted according to its settled meaning under common law. *In re Renshaw*, 222 F.3d 82, 88 (2nd Cir.2000). To constitute a loan, there must be (1) a contract, whereby (2) one party transfers a defined quantity of money, goods, or services, to another, and (3) the other party agrees to pay for the sum or items transferred at a later date. This implies that the contract to transfer items in return for payment later must be reached prior to or contemporaneous with the transfer. Where such is the intent of the parties, the transaction will be considered a loan regardless of its form. Absent such an agreement, failure to pay a bill when due does not create a loan. *In re Renshaw*, 222 F.3d 82, 88 (2nd Cir.2000), citing *NLRB v. Amax Coal Co.*, 453 U.S. 322, 329, 101 S.Ct. 2789, 69 L.Ed.2d 672 (1981); *see also In re Merchant*, 958 F.2d 738, 740–741 (6th Cir. 1992); *In re Johnson*, 218 B.R. 449, 455 (8th Cir. BAP 1998); *In re Johnson*, 222 B.R. 783 (Bankr.E.D.Va.1998); *In re Grand Union Co.*, 219 F. 353 (2nd. Cir. 1914).

The University relies on the Agreement and the Deferred Payment Request as proof of a loan made to Navarro.

Cases finding that nonpayment of tuition and/or fees can qualify as an educational loan are roughly divided into two classes. In the first, funds necessarily need not change hands, see, for example, *In re Johnson*, 218 B.R. 449, 455 (8th Cir. BAP 1998), in which Missouri Baptist College extended credit to Johnson for tuition, books and other expenses. Johnson executed a promissory note on August 28, 1989, with the balance due to be repaid in December, 1989. In 1996, Johnson filed for Chapter 13 protection. In 1997, the College filed a complaint to determine the dischargeability of the debt. The bankruptcy court determined the debt to be nondischargeable, and Johnson appealed. The bankruptcy court's decision was upheld by the 8th Circuit Bankruptcy Appellate Panel. The BAP found that to create a loan, money need not change hands, and that the intent of the parties must be considered. In *Johnson*, the intent of the parties to create a loan was expressed by Johnson's executing the promissory note. By permitting Johnson to attend classes without repayment, the College was "advancing" funds or credits to Johnson's account. Johnson drew upon the advances through her class attendance. It was immaterial that no money changed hands. *Johnson*, at 457. *See also In re Joyner*, 171 B.R. 762 (Bankr.E.D.Pa.1994), in which the loan extended by a college so a student could pay for campus housing and a meal plan was found to be an educational benefit and not dischargeable in bankruptcy. In the instant case, the stipulated facts state that Navarro received no scholarship or stipend from the University, nor did the University pay any money to or on behalf of Navarro.

In the second class of cases, there is an agreement between the college and the student whereby the college extends credit to the student permitting him to attend classes without paying tuition, in return for his agreement to pay tuition at a future date, as in a promissory note. *Renshaw, supra* at 90.

### D.   Agreement to make a Loan

Generally, where there is no indication of a prior agreement or a promissory note, the cases find no loan exists. *In re Renshaw, supra*, at 91; *In re Nelson*, 188 B.R. 32, 33 (D.S.D.1995) (no educational loan where student attended without paying tuition and signed "payment plan application and promissory note" after withdrawal); *In re Alibatya*, 178 B.R. 335, 339 (Bankr. E.D.N.Y.1995) (no loan where student

failed to pay housing rent under lease agreement with university); *In re Peller*, 184 B.R. 663, 664, 668–669 (Bankr.D.N.J. 1994) (no loan where student signed "Intent to Register" form and then attended classes without paying tuition).

The University cites *In re Oldham*, 220 B.R. 607 (Bankr.N.D.Ill.1998), for the proposition that a debt incurred as part of an employer tuition reimbursement plan is a loan for the purposes of § 523(a)(8), and nondischargeable. In *Oldham*, however, the debt was for a definite sum, with interest as provided by a promissory note executed by the debtor. In signing the note, the debtor promised to repay the sum in the future, if funds were not received from his employer.

The University also cites *In re Merchant*, 958 F.2d 738 (6th Cir.1992), in which the court decided that credit extensions given by nonprofit institutions to students as evidenced by promissory notes payable to the institutions constitute student loans for nondischargeability purposes. *Merchant*, however, is distinguishable in that the student loans therein were expressed by promissory notes, which set forth a sum certain. The student in *Merchant* took out loans with a bank to finance her education. The loan provided the bank full recourse against Andrews University if the student defaulted. In addition, Merchant received assistance for educational expenses which were evidenced by promissory notes to Andrews University. After graduation, Merchant defaulted on her obligations both to Andrews University and to the bank. The bank sought recourse against Andrews University, and the University, pursuant to its agreement with the bank, paid the bank, took assignment of the note, and became the sole student loan creditor to Merchant.

Merchant then filed for Chapter 7 bankruptcy. In determining whether or not the funds owed to Andrews University constituted a loan, the Sixth Circuit looked at the definition of a loan, focusing on the same cases discussed above. The Court then added factors from *In re Hill*, 44 B.R. 645 (Bankr.D.Mass.1984). Those factors included: (1) the student was aware of the credit extension and acknowledged the money owed; (2) the amount owed was liquidated; and (3) the extended credit was defined as "a sum of money due to a person." In *Merchant*, the student signed forms evidencing the amount of her indebtedness before she registered for classes. She agreed, prior to receiving the sums owed, to repay those sums after graduation. The credit extensions were educational loans for educational expenses.

In this case, there were no promissory notes executed prior to or contemporaneous with Navarro's enrollment. There were no agreements to repay in the future any credit extended at the time of Navarro's enrollment. There also was no sum certain, only a statement of fees per credit hour. For this reason, the facts of this case do not fit within *Merchant*.

*In re Renshaw*, 222 F.3d 82, 88 (2nd Cir.2000), involved a case where a student did not pay tuition when it came due. Upon enrollment, Renshaw signed a Reservation Agreement, in which Cazenovia College was obligated to hold a place open for Renshaw, provided he paid the amounts billed when due. The Agreement further required Renshaw to remit funds to the college when he returned the signed Agreement, and to timely pay tuition, room and board for the 1992 summer session and the 1992–1993 academic year, including a "service charge" of 19.2% if payments on the student account were not made by their due dates. Tuition was due by September 1, 1992 for the fall semester and January 1, 1993 for the spring 1993 semester. Although Renshaw failed to

pay the amounts when due, Cazenovia allowed him to register, live in college housing, eat in the cafeteria and attend classes for both the summer 1992 session and the fall 1992 semester. Renshaw did not return for the spring 1993 semester. Cazenovia obtained a default judgment against Renshaw and Renshaw filed for bankruptcy protection. Cazenovia instituted an adversary proceeding, and the bankruptcy court found the debt dischargeable. The Bankruptcy Appellate Panel for the Second Circuit affirmed the lower court's decision, and the matter was appealed to the Second Circuit. *Renshaw*, at 89.

The 2nd Circuit combined the *Renshaw* appeal with a similar case, *College of St. Rose v. Regner*. *Regner* is even more on point with this case. In *Regner*, a student who enrolled in the College of St. Rose in 1991 regularly paid his tuition bills at the beginning of each semester with student aid funds, until the fall 1993 semester when he did not pay in advance. Nevertheless, St. Rose permitted him to attend that semester without fully prepaying his tuition. In April, 1994 St. Rose sent Regner a letter asking him to contact the college's business office to discuss his past due bills. Regner acknowledged his debt, and made some payments, but never fully paid the bill. St. Rose obtained a default judgment against Regner, and Regner filed for bankruptcy protection. The bankruptcy court granted Regner summary judgment, and the District Court affirmed. St. Rose further appealed to the Second Circuit. *Renshaw*, at 90.

In their combined appeals, Cazenovia and St. Rose maintained that by allowing the students to attend without paying tuition, the colleges extended an "educational loan" within the meaning of § 523(a)(8). The students did not argue that their attendance was not educational. Instead, they argued that the services or goods the colleges gave them did not constitute a loan within the meaning of § 523(a)(8). *Renshaw*, at 88.

Similar to the case at bar, neither college required any agreement, prior to or contemporaneous with, the students' attendance that the respective colleges would provide the students with educational services and that the students would pay for them at a later date, such as one might find in a promissory note. There were no agreements about future class attendance or any extensions of credit. The Second Circuit affirmed the trial court and the BAP, finding that the tuition arrangement between the universities and the debtor students were not loans to qualify for non-dischargeability under § 523(a)(8).

This court finds the facts of *Renshaw* similar to the instant facts and the finding that no loans existed persuasive.

### E.  There Is No Loan Present

In this case, there were no agreements prior to or contemporaneous with Navarro's enrollment indicating that the University would permit Navarro to attend classes and pay for the tuition and other expenses at a later date. The Agreement and the Deferred Payment Request merely stated that the student would be responsible for fees and tuition. The Agreement further provided the hourly rate for tuition, and that the due date for tuition was the first day of each semester. No liquidated sums were stated. Navarro made no promises that he would repay any sums in the future. By signing the Agreement, Navarro acknowledged that he knew what the hourly tuition fees were and that he understood he was responsible for prompt payment of tuition and expenses by the due date. Further, the Deferred Payment Request was not even executed by Navarro until well into his attendance at University. Although these documents indicate

734

that Navarro was liable for his tuition, no where in them did Navarro agreed to repay a sum certain in the future. Therefore, the transaction does not constitute a loan within the meaning of 11 U.S.C. § 523(a)(8).

## IV. CONCLUSION

For the reasons stated, this Court holds that Navarro did not receive an educational loan for the purposes of § 523(a)(8), and accordingly, his debt to the University of Redlands is dischargeable in bankruptcy. This memorandum of decision shall constitute the court's findings of fact and conclusions of law as allowed under F.R.B.P. 7052(a). Plaintiff shall prepare a judgment in accordance with this ruling.