**In re Margaret OLDHAM, Debtor.**

**ROOSEVELT UNIVERSITY, Plaintiff,**

v.

**Margaret OLDHAM, Defendant.**

**Bankruptcy No. 97 B 15804.**

**Adversary No. 97 A 01269.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

· March 30, 1998.

---

Samuel A. Shelist, Edward L. Schuller & Associates, Chicago, IL, for Plaintiff.

David J. Boerma, Wheaton, IL, for Defendant.

### MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes on for a determination of the dischargeability of a debt pursuant to 11 U.S.C. § 523(a)(8)(A) incurred by Margaret Oldham (the "Debtor") for unpaid tuition owed to Roosevelt University (the "Creditor"). The defense is that the debt is not for "an educational benefit overpayment" or a "loan" for purposes of the statute. The Court holds that an extension of credit for unpaid tuition evidenced by a promissory note constitutes a "loan" for purposes of § 523(a)(8)(A) even though no money exchanged hands between the Creditor and the Debtor. Accordingly, the debt is nondischargeable.

### I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

## II. FACTS AND BACKGROUND

In lieu of any testimony at trial, the parties stipulated to the material undisputed facts and exhibits. In 1993 and 1994, the Debtor was an employee of the Motorola Corporation. Motorola Corporation offered its employees an incentive program in which it would reimburse an employee's tuition costs for college courses attended by the employee with an achieved grade of "C" or better. Pursuant to the program, the Debtor registered and enrolled as a student in the Fall 1993 and Spring 1994 semesters at the Creditor's Chicago campus. The Debtor provided the Creditor with a Letter of Intent from Motorola Corporation and paid two $85.00 registration fees. The Creditor, under its ROOSTR Tuition Reimbursement Program, did not collect any further funds from either the Debtor or Motorola Corporation at that time, but anticipated the receipt of the full amount of unpaid tuition from the Debtor upon her reimbursement of the tuition costs from Motorola Corporation. Under this program, the student signs a deferred tuition note in the amount of the tuition. The note provides that the student has submitted a letter from the student's employer that the employer will reimburse its employee for the tuition expenses.

At the time of registration, the Creditor required students registering under the ROOSTR Tuition Reimbursement Program to sign a promissory note promising to pay the total tuition cost, whether or not the student had received reimbursement from the employer. The Debtor signed two promissory notes for the unpaid tuition for the two semesters. See Exhibit Nos. 1 and 2 to Stipulation of Facts and Exhibits. She completed both semesters' courses with a grade of "C" or better. Other than the registration fees, neither the Debtor nor Motorola Corporation paid the Creditor any funds on account of the unpaid tuition.

In July, 1995, the Debtor was involuntarily terminated from her employment. Prior to her termination, the Debtor made application to Motorola Corporation for full reimbursement of the tuition expenses. Shortly before her employment termination, the Debtor provided the Creditor with her personal check post-dated August 14, 1995, in the amount of $3,519.18 in anticipation of receiving her reimbursement check prior to the Creditor cashing that check. See Exhibit No. 3 to Stipulation of Facts and Evidence. Sometime after her termination, the Debtor received approximately 65% of her tuition expenses from Motorola Corporation. At that time, the Debtor needed those funds to pay back rent and ordinary living expenses due to her unemployment. She was unable to pay the tuition expenses. The Debtor put a stop payment order on her personal check to the Creditor because she realized she had insufficient funds in her account to cover the check. Subsequently, a lawsuit was filed and a judgment was entered against the Debtor and in favor of the Creditor in Cook County, Illinois in the amount of $3,519.18, plus court costs.

The Debtor filed a voluntary Chapter 7 petition on May 21, 1997. On September 5, 1997, the Creditor filed the instant complaint to determine whether the judgment debt for the unpaid tuition should be found nondischargeable under § 523(a)(8)(A). Although the Debtor does not dispute the underlying debt for the unpaid tuition, she contends that it is neither an "educational benefit overpayment" nor a "loan." She cites several cases in support of her conclusion that this debt is dischargeable as a matter of law and statutory construction. The Creditor cites another line of case law to the contrary which concludes that unpaid tuition does fit within the statutory exception even though the school did not advance any money to the debtor, but provided the education on credit as evidenced by a promissory note.

## III. APPLICABLE STANDARDS

The party seeking to establish an exception to the discharge of a debt bears the burden of proof. Selfreliance Fed. Credit Union v. Harasymiw (In re Harasymiw), 895 F.2d 1170, 1172 (7th Cir.1990); Banner Oil Co. v. Bryson (In re Bryson), 187 B.R. 939, 961 (Bankr.N.D.Ill.1995). The United States Supreme Court has held that the burden of proof required to establish an exception to discharge is a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279,

291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991). *See also In re McFarland*, 84 F.3d 943, 946 (7th Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 302, 136 L.Ed.2d 220 (1996); *In re Thirtyacre*, 36 F.3d 697, 700 (7th Cir. 1994). To further the policy of providing a debtor a fresh start in bankruptcy, "exceptions to discharge are to be construed strictly against a creditor and liberally in favor of a debtor." *Goldberg Secs., Inc. v. Scarlata (In re Scarlata)*, 979 F.2d 521, 524 (7th Cir.1992) (quoting *In re Zarzynski*, 771 F.2d 304, 306 (7th Cir.1985)). *Accord Meyer v. Rigdon*, 36 F.3d 1375, 1385 (7th Cir.1994).

Section 523(a)(8)(A) prohibits the discharge of an individual debtor from any debt:

> (8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship, or stipend, unless—
>
> (A) such loan, benefit, scholarship, or stipend overpayment first became due more than 7 years (exclusive of any applicable suspension of the repayment period) before the date of the filing of the petition. . . .

11 U.S.C. § 523(a)(8)(A). This section identifies three categories of obligations that are excepted from discharge: (1) educational benefit overpayments; (2) loans; and (3) obligation to repay funds advanced. *Missouri Baptist College v. Johnson (In re Johnson)*, 215 B.R. 750, 752 (Bankr.E.D.Mo.1997) (citation omitted). Only the first and second categories are at issue in this matter.

■ The Seventh Circuit noted in *United States v. Wood*, 925 F.2d 1580 (7th Cir.1991) that: "[t]he legislative history of section 523(a)(8) indicates that the statute was meant to be self-executing so that the creditor would not be required to file a complaint to determine the dischargeability of a student loan." Congress created a presumption that student loans are nondischargeable, and therefore the burden of challenging that presumption falls on the debtor. *Id.* at 1583.

The cases tend to focus on the date the debt became first due for purposes of subsection (A), or the alleged undue hardship for purposes of subsection (B). *See, e.g., Nunn v. State of Washington (In re Nunn)*, 788 F.2d 617 (9th Cir.1986); *In re Roberson*, 999 F.2d 1132 (7th Cir.1993). A leading treatise trenchantly observes that "[f]or a loan to be denied discharge under [§ 523(a) ](8) it must first be an educational loan." 2 D. Epstein, S. Nickles and J. White, *Bankruptcy* § 7–33(b) at 395 (1992). These learned authors, however, also conclude, contrary to the parties' views at bar, "[n]or is 'loan' likely to cause much difficulty." *Id. See also Ealy v. First National Bank of Matton (In re Ealy)*, 78 B.R. 897 (Bankr.C.D.Ill.1987) (test for determining whether loan is a "student loan" is whether loan proceeds were used for educational purposes). The legislative gloss to the 1990 amendments to § 523(a)(8) in pertinent part noted that: "Section 201 of the act extends the Bankruptcy Code's *nondischargeability of student loans to debts which are similar in nature to student loans.*" 136 Cong. Rec. H13288 (daily ed. Oct. 27, 1990) (remarks of Rep. Brooks) (emphasis supplied).

The dispute at bar poses the issue infrequently presented under § 523(a)(8)(A) by which "the courts continue to struggle with whether debts owed directly to schools for unpaid tuition and other expenses are within the scope of the provision. . . ." 1 R. Ginsberg and R. Martin, *Ginsberg and Martin On Bankruptcy* § 11.06[L][1] at 11–145 (4th ed.1998) (collecting cases). The 1990 amendment to § 523(a)(8) expanded the application of the section (as to cases filed on or after May 28, 1991) to include any educational benefit overpayment and any obligation to repay funds received as an educational benefit, scholarship, or stipend. *Id. See also* 4 L. King, *Collier On Bankruptcy* ¶ 523.-LH[3][a] at 523–121 (rev. 15th ed. 1997). For a discussion of the evolution of the section in Congress, *see Santa Fe Medical Servs., Inc. v. Segal (In re Segal)*, 57 F.3d 342 (3d Cir.1995).

## IV. *DISCUSSION*

The issue before the Court is whether the unpaid tuition owed by the Debtor to the

Creditor is either a "loan" or "educational benefit overpayment" within the meaning and language of the statute. The Creditor urges the Court to follow the logic of the Sixth Circuit in *Andrews Univ. v. Merchant (In re Merchant)*, 958 F.2d 738 (6th Cir. 1992), which concluded that an extension of credit evidenced by a promissory note was a "loan" although no money changed hands. The *Merchant* court reviewed the language of the statute together with the design and policy underlying the overall statutory scheme to ascertain the Congressional intent. *Id.* at 739. The university processed and submitted the debtor's loan application to a bank and guaranteed the loan. *Id.* The bank had full recourse on the university for the unpaid balance due on the promissory note given by the debtor. *Id.* The *Merchant* court was persuaded by the reasoning of *University of New Hampshire v. Hill (In re Hill)*, 44 B.R. 645 (Bankr.D.Mass.1984), which found the undefined term "loan" in § 523(a)(8) included extensions of credit when the following factors are present: (1) the student was aware of the credit extension and acknowledges the money owed; (2) the amount owed was liquidated; and (3) the extended credit was defined as "a sum of money due to a person." 958 F.2d at 741. The court also cited with approval *Department of Mental Health, State of Missouri v. Shipman (In re Shipman)*, 33 B.R. 80 (Bankr.W.D.Mo.1983), which held that the central issue in determining dischargeability is whether the funds were for educational purposes, not whether the funds constituted a loan. *Id.* at 82 n. 2.

Thus, the *Merchant* view is that the bankruptcy court should look to the substance of the debt in question to see if it fits within the category of unsecured student debts for educational benefits. Because the university in *Merchant* had guaranteed the note and underlying obligation it had participated in the student loan and thereby funded the credit extended to the student debtor. *See also United States Dept. of Health and Human Services v. Smith*, 807 F.2d 122 (8th Cir. 1986) (debtor's financial obligation incurred under the Physician Shortage Area Scholarship Program was a nondischargeable "educational loan"). Both *Merchant* and *Smith*

aptly note that neither § 523(a)(8) nor any other section of the Bankruptcy Code define the term "loan" or "educational benefit overpayment." In addition, *Smith* cited favorably to *United States Dept. of Health and Human Services v. Avila (In re Avila)*, 53 B.R. 933 (Bankr.W.D.N.Y.1985), which looked at whether the debt was for a nondischargeable educational loan in light of the Congressional gloss and legislative history to § 523(a)(8) and the policy excepting from discharge those types of recently incurred debts for educational benefits. 807 F.2d at 126. More recently, the court in *Stone v. Vanderbilt Univ. (In re Stone)*, 180 B.R. 499 (Bankr.M.D.Tenn.1995) followed the view articulated in *Merchant, Hill* and *Shipman* and held that the debt evidenced by a note executed by the debtor to the university was a nondischargeable "loan." *See also Johnson*, 215 B.R. at 754. The *Stone* court also cited with approval *Najafi v. Cabrini College (In re Najafi)*, 154 B.R. 185 (Bankr.E.D.Pa. 1993), which held that a student account was both a loan and an educational benefit. *Id.* at 187, 190.

In contrast, the Debtor cites to the line of cases which holds that direct debts for unpaid tuition and related debts owed by student-debtors to their respective creditor-schools are not "loans" and thus do not fall within the exception of § 523(a)(8). *See, e.g., New Mexico Institute of Mining and Technology v. Coole (In re Coole)*, 202 B.R. 518 (Bankr.D.N.M.1996). The *Coole* court concluded that the debts were not an "educational benefit overpayment" because there were no periodic payments or funds received by the debtor for certifying that he was in school, like under the GI Bill, nor was there an obligation to repay funds received because no funds were ever received by the debtor from the creditor. Moreover, the *Coole* court found there was no "loan" under its view of the "plain meaning" of the word drawn from a definition set forth in Black's Law Dictionary. *Coole* cited the following definition of loan:

> **Loan.** A Lending. Delivery by one party to and receipt by another party of sum of money upon agreement, express or im-

plied, to repay it with or without interest. Black's Law Dictionary 712 (6th ed.1990).

202 B.R. at 519 (citation omitted). The court rejected the logic and definition of loan used in *Merchant* and *Alibatya v. New York Univ. (In re Alibatya)*, 178 B.R. 335 (Bankr. E.D.N.Y.1995) because those cases ignored the fact that no sum of money had ever changed hands. 202 B.R. at 519. *Coole* concluded that the plain meaning of "loan" requires that a sum of money must change hands. *Id.*

The Debtor also cites *Seton Hall Univ. v. Van Ess (In re Van Ess)*, 186 B.R. 375 (Bankr.D.N.J.1994), which similarly held that unpaid law school tuition did not result in an extension of credit by the law school so as to give rise to a nondischargeable "loan" or "educational benefit overpayment." The *Van Ess* court reviewed the legislative history of § 523(a)(8) and rejected the statutory construction employed by *Najafi*. The *Van Ess* court concluded that there was nothing in § 523(a)(8) to produce a different result in the case of the university's unpaid tuition claim from the medical doctors, hospitals, and other creditors of that debtor who all provided goods or services and expected to be paid. To except unpaid tuition required an overly broad reading of the statute unsupported by the legislative history in the *Van Ess* court's view. *Id.* at 379.

The Debtor further relies on *Dakota Wesleyan Univ. v. Nelson (In re Nelson)*, 188 B.R. 32 (D.S.D.1995), which followed *Peller v. Syracuse Univ. (In re Peller)*, 184 B.R. 663, 669 (Bankr.D.N.J.1994). These cases concluded that tuition, room and board, and other services provided by universities to debtors cannot be appropriately categorized as either an "educational benefit overpayment" or as a "loan." Both *Nelson* and *Peller* found that neither the university nor any governmental unit provided funds to the debtor in order for her to obtain the educational benefit received. 188 B.R. at 33, 184 B.R. at 668. This point is central to the Debtor's defense which relies on the narrow view and definition of "loan."

One of the problems with *Coole*'s reliance on the quoted definition of the word "loan" from Black's Law Dictionary is that it is not the sole definition of the word. The very next definition in Black's states: "[a]nything furnished for temporary use to a person at his request, on condition that it shall be returned, or its equivalent in kind, with or without compensation for its use." BLACK'S LAW DICTIONARY 936 (6th ed.1990) (citation omitted). Another definition includes "[a] borrowing of money or other personal property by a person who promises to return it." *Id.* Frankly, it defies common sense and the frequent use of the term to merely confine "loan" to cash or money transactions. If one can "loan" a tangible piece of property to someone, such as a tool, car or the like, one can "loan" intangible things such as credit for unpaid tuition.

In any event, Congress has not seen fit to define the terms "loan" or "educational benefit overpayment" in either § 523(a)(8) or elsewhere in the Bankruptcy Code. Thus, the Court is reluctant to place too great a reliance on the perceived "plain meaning" of the undefined terms, in light of the wise adage from *In re Heck*, 212 B.R. 314 (Bankr.C.D.Ill. 1997):

> Determining the plain meaning of a statute is almost always a tricky procedure. As one commentator has observed, "Lawyers are paid to disagree; it is the very nature of our adversarial system. Five lawyers worth their salt can come up with five different meanings for 'Mary had a little lamb.'" Palmer, What will *Dewsnup* Do to 1322(b)(2) Or The Lien Splitter Meets the Tin Woodman, NACTT Quarterly, Vol. 5, No. 3, p. 25 (April 1992).

*Id.* at 315–16.

■ The Court respectfully declines to adopt the view urged by the Debtor and the narrow definition employed for "loan" by *Coole* and limit the exception of § 523(a)(8)(A) to only those student obligations in which the creditor, whether school or financial institution, has directly or indirectly transferred money or some form of cash equivalent to the debtor. Rather, the Court adopts the view that the nature of the debt, if for some clear educational benefit to the debtor, should be the principal focus for determining whether the exception of

§ 523(a)(8)(A) should apply. The Court adheres to the view that the substance of the debt and what it was incurred for should control over the form in which the debt is created or structured. Thus, the analysis utilized in *Hill* and the framing of the issue per *Shipman,* and the approach of whether or not the creditor has actually extended some form of credit to the debtor in the form of an educational benefit under *Merchant* is the better approach. *See also Barth v. Wisconsin Higher Educ. Corp. (In re Barth),* 86 B.R. 146 (Bankr.W.D.Wis.1988) (statute focuses on nature and character of the loan).

 Turning to the matter at bar and applying the *Hill* factors, the facts show that the debt is one based on the unsecured credit afforded the Debtor by the Creditor, which the Debtor acknowledged. The debt was for a liquidated total and for a definite sum of money representing the unpaid tuition, plus interest, as provided in the promissory notes. The debt is due the Creditor, an artificial person and not-for-profit corporation. There is no dispute that the unpaid debt for tuition resulted in an educational benefit to the Debtor who successfully completed the classwork and received the stipulated reimbursement from her former employer. The Debtor has received the consideration of the education, which she has not repaid within the seven years after the first payment came due. This debt was a "loan" for purposes of § 523(a)(8)(A) and not an "educational benefit overpayment" because although the educational benefit was extended on the Debtor's promise to pay in the future, there was no overpayment of anything to or for the benefit of the Debtor.

No different result should obtain here under these facts than if Motorola Corporation (or anyone else) lent the money to the Debtor who then assigned the notes for the unpaid balance to the Creditor to collect. There is no serious argument that under this hypothetical variant, the holder of the notes would be able to maintain a successful § 523(a)(8)(A) claim against the Debtor, all other facts and circumstances remaining the same.

## V. *CONCLUSION*

For the foregoing reasons, the Court concludes that the debt is nondischargeable under § 523(a)(8)(A). Accordingly, judgment is entered in favor of the Creditor and against the Debtor.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.