**In re Trisza Leann RAY, Debtor.**

**Trisza Leann Ray, Plaintiff,**

v.

**The University of Tulsa, Works & Lentz, Inc., an Oklahoma professional corporation, and Works & Lentz of Tulsa, Inc., an Oklahoma professional corporation, Defendants.**

**Bankruptcy No. 98–01935–M.
Adversary No. 00–0157–M.**

United States Bankruptcy Court, N.D. Oklahoma.

May 3, 2001.

David E. O'Meilia, Tulsa, OK, for Plaintiff.

Kenneth G.M. Mather, Tulsa, OK, for University of Tulsa.

Mac D. Finlayson, Tulsa, OK, for Works & Lentz, Inc.

## MEMORANDUM OPINION

TERRENCE L. MICHAEL, Chief Judge.

THIS MATTER comes before the Court pursuant to the Motion for Partial Summary Judgment (the "Motion") filed by Trisza Leann Ray, Plaintiff herein ("Plaintiff" or "Ms. Ray"), and the Response to Motion for Partial Summary Judgment and Cross–Motion for Summary Judgment (the "Response") filed by the University of Tulsa ("Defendant" or "TU"), and the various replies and responses to each. At issue is whether unpaid tuition owed by Ms. Ray to TU has been discharged. The following findings of fact and conclusions of law are made pursuant to Bankruptcy Rule 7052 and Federal Rule of Civil Procedure 52.

## Jurisdiction

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C.A. § 1334(b).[1] Reference to the Court of this adversary proceeding is proper pursuant to 28 U.S.C.A. § 157(a). This is a core proceeding as contemplated by 28 U.S.C.A. § 157(b)(2)(A) and (I).

### Summary Judgment Standard

Summary judgment is proper where " 'there is no genuine issue as to any material fact.' " *Celotex v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)(citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c), made applicable to this adversary proceeding by Fed. R. Bank. P. 7056.

The United States Court of Appeals for the Tenth Circuit has ruled that "[e]ntry of summary judgment is mandated, after an adequate time for discovery and upon motion, 'against a party who fails to make a showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.' " *Aldrich Enterprises, Inc. v. United States,* 938 F.2d 1134, 1138 (10th Cir.1991), *reh'g denied* October 4, 1991 (citation omitted); *accord, Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256–57, 106 S.Ct. 2505, 2514–15, 91 L.Ed.2d 202 (1986). Summary judgment is only appropriate if the facts set forth by the movant are properly supported with admissible evidence and the facts affirmatively show

that the movant is entitled to judgment on those facts as a matter of law. *See* Fed. R.Civ.P. 56(e).

### Findings of Fact

The Court finds that the following facts are undisputed for purposes of the Motion and the Response:

1. Ms. Ray is an individual.
2. TU is an institution of higher learning located in the City of Tulsa, Tulsa County, Oklahoma.
3. Ms. Ray was a student at TU during the 1996 Spring Term.
4. On or about February 24, 1996, Ms. Ray executed and delivered to TU a document described as an enrollment card (the "First Enrollment Card"). The First Enrollment Card contained a listing of the classes which Ms. Ray sought to take during the 1996 Spring Term, and also contained the following provision: "I agree to pay the total fee assessed based upon this enrollment plus an interest rate of 1.5% monthly on balances over thirty days past due."
5. Ms. Ray was a student at TU during the 1996 Summer Term.
6. On or about June 18, 1996, Ms. Ray executed and delivered to TU another enrollment card (the "Second Enrollment Card"). The Second Enrollment Card contained a listing of the classes which Ms. Ray sought to take during the 1996 Summer Term, and also contained the following provision: "I agree to pay the total fee assessed based upon this enrollment plus an interest rate of 1.5% monthly on balances over thirty days past due."
7. Ms. Ray was a student at TU during the 1996 Fall Term.

---

1. Unless otherwise noted, all statutory references are to sections of the United States

Bankruptcy Code, 11 U.S.C.A. § 101 *et seq.* (West 2001).

8. On or about August 29, 1996, Ms. Ray executed and delivered to TU another enrollment card (the "Third Enrollment Card"). The Third Enrollment Card contained a listing of the classes which Ms. Ray sought to take during the 1996 Fall Term, and also contained the following provision: "I agree to pay the total fee assessed based upon this enrollment plus an interest rate of 1.5% monthly on balances over thirty days past due."

9. Neither the First Enrollment Card, the Second Enrollment Card, nor the Third Enrollment Card (hereafter collectively referred to as the "Enrollment Cards") contained a statement of the fees incurred or the dollar amount owed by Ms. Ray to TU. *See Deposition of Peter J. Sandman,* page 11, lines 11 through 15.

10. Each and every student at TU was required to execute and deliver similar enrollment cards to TU prior to attending classes. *See Deposition of Peter J. Sandman,* page 23, line 24 through page 24, line 5.

11. Other than the Enrollment Cards, no other documents exist which would reflect any agreement between Ms. Ray and TU regarding payment by Ms. Ray of monies owed directly to TU. *See Deposition of Peter J. Sandman,* page 36, lines 8 through 16.

12. At no time during 1996 did TU provide Ms. Ray with any form of documentation which would indicate that TU considered the obligations of Ms. Ray under the terms of the Enrollment Cards to be a "loan" or an "extension of credit." *See Deposition of Peter J. Sandman,* page 38, lines 3 through 14.

13. When a student enrolls at TU, TU creates a "student account" in the name of that student, for the purpose of tracking monies due and owing to TU from that particular student. *See Deposition of Peter J. Sandman, seriatim.*

14. All charges which a student at TU might incur for tuition, room and board, student fees and other miscellaneous charges would be debited against that student's student account. *See Deposition of Peter J. Sandman,* page 16, lines 2 through 11 and page 18, lines 11 through 19.

15. TU established student account number 0164113 in the name of Ms. Ray. *See Deposition of Peter J. Sandman,* page 45, line 2 through page 46, line 18, and exhibit 7.

16. Under the policies in force at TU during all of 1996, all tuition fees were due and payable upon the first day of classes. *See Deposition of Peter J. Sandman,* page 21, lines 2 through 6.

17. As of February 17, 1998, Ms. Ray owed TU the sum of $4,135.28 (the "Obligation"), which sum represents unpaid tuition for the 1996 Spring, Summer and Fall Terms.

18. On February 17, 1998, Ms. Ray filed a petition for relief under chapter 7 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Oklahoma (the "Bankruptcy Case"). The Bankruptcy Case was docketed as Case No. 98–01935–M.

19. TU was scheduled as a creditor in the Bankruptcy Case.

20. On or about August 19, 1998, this Court entered an Order of Discharge in the Bankruptcy Case.

21. After the entry of the Order of Discharge, TU, both in its own capacity and through its agents, continued its efforts to collect the Obligation from Ms. Ray.

22. On or about November 4, 1999, Ms. Ray caused the Obligation to be paid in full.

To the extent the "Conclusions of Law" contain any items which should more appropriately be considered "Findings of Fact," they are incorporated herein by this reference.[2]

### Issue Presented

The issue presently before the Court is whether the obligations of Ms. Ray to TU constitute

... an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, ...

See § 523(a)(8). The ultimate issue in this case; i.e., whether TU should be held in contempt of this Court cannot be reached until this issue has been determined.

### Burden of Proof

■ Exceptions to discharge are to be narrowly construed in favor of the debtor. See Bellco First Federal Credit Union v. Kaspar (In re Kaspar), 125 F.3d 1358, 1361 (10th Cir.1997). Under § 523, a creditor seeking to except its claim from discharge must prove the claim is nondischargeable by a preponderance of the evidence. See Grogan v. Garner, 498 U.S.

279, 287, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

### Conclusions of Law

■ It is undisputed that Ms. Ray attended classes at TU without paying the necessary tuition. Each time she enrolled in classes, Ms. Ray signed an Enrollment Card in which she promised "to pay the total fee assessed based upon this enrollment plus an interest rate of 1.5% monthly on balances over thirty days past due." The question before the Court is whether this arrangement constitutes a "loan" or an "obligation to repay funds received as an educational benefit" under the provisions of § 523(a)(8). Ms. Ray contends that it does not, and that whatever obligation she owed to TU was discharged in her underlying bankruptcy case. Not surprisingly, TU disagrees. Research has uncovered no published decisions within the Tenth Circuit which address this issue.

■ The starting point for a court's interpretation of a statute is the language of that statute. See Sac and Fox Nation of Mo. v. Norton, 240 F.3d 1250, 1266 (10th Cir.2001). "The words of the statute must be construed in their ordinary, everyday sense." Chickasaw Nation v. United States, 208 F.3d 871, 876 (10th Cir.2000). The term "loan" is not defined in § 523(a)(8), or anywhere else in the Bankruptcy Code. "Where Congress uses terms that have accumulated settled meaning under either equity or the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of those terms." NLRB v. Amax Coal Co., 453 U.S.

---

2. Both parties have listed numerous additional alleged undisputed facts in their moving papers. Many of those facts relate to the issue of whether TU should be held in contempt of this Court, and not to the issue raised by the Motion and the Response. The Court relies only upon those facts listed above in reaching its decision with respect to the Motion and the Response.

322, 329, 101 S.Ct. 2789, 69 L.Ed.2d 672 (1981).

Ms. Ray argues that the Court should adopt the definition of a loan that was recently applied by the United States Court of Appeals for the Second Circuit in *Cazenovia College v. Renshaw (In re Renshaw)*, 222 F.3d 82 (2d Cir.2000). In *Renshaw* the debtor signed an agreement that obligated the college to hold a place open for him, provided he paid a reservation fee along with tuition, room, and board for the upcoming semester. The agreement also required the debtor to pay a service charge if payments on his account were not made by their due dates. *See id.* at 85. Such agreements were routinely required by the college with each incoming student without first investigating the student's financial needs, creditworthiness, or intent to pay the fees on time. Although the debtor failed to make the required payments, the college permitted him to register, attend classes, live in college housing and eat at the college cafeteria. The debtor later dropped out of school, and the college obtained a judgment against him for the outstanding debt. The debtor subsequently filed for chapter 7 bankruptcy. The college filed an adversary proceeding seeking a determination that the debt was nondischargeable. The bankruptcy court denied the college's motion for summary judgment and dismissed the complaint, and the Bankruptcy Appellate Panel for the Second Circuit affirmed. *See id.*

The college appealed to the circuit court. After undertaking an examination of the legislative history of § 523(a)(8), the circuit court defined a loan, for purposes of § 523(a)(8), as "(1) a contract, whereby (2) one party transfers a defined quantity of money, goods, or services, to another, and (3) the other party agrees to pay for the sum or items transferred at a later date."

*Id.* at 88 (citing *In re Grand Union Co.*, 219 F. 353 (2d Cir.1914)). The court continued:

> This definition implies that the contract to transfer items in return for payment later must be reached prior to or contemporaneous with the transfer. Where such is the intent of the parties, the transaction will be considered a loan regardless of its form. *Absent such an agreement, failure to pay a bill when due does not create a loan.*

*Id.* (emphasis added). The *Renshaw* court concluded that the transaction in question was not a loan, noting that there was no agreement to extend credit or to permit the debtor to attend classes in return for paying tuition at a later date. *See id.* The court also rejected the college's argument that the reservation agreement was itself evidence of a loan. The agreement did not contain any promise to allow the debtor to attend classes before paying tuition. The circuit court characterized the reservation agreement as an offer by the college to sell goods and services to the student at specified prices. *See id.* at 89.

The facts of this case closely mirror those of *Renshaw*. Neither the debtor in *Renshaw* nor Ms. Ray applied for a loan or signed a promissory note. In both instances: (1) the universities required all incoming students to execute the operative documents without investigating the students' finances or ability to pay; (2) tuition was due prior to the commencement of classes; (3) the students made unilateral decisions not to pay the tuition when it came due; and (4) the universities allowed the students to attend class, notwithstanding their failure to pay tuition. After thorough review, this Court finds the legal analysis contained in *Renshaw* persuasive and concludes that the obligation of Ms. Ray to TU is not a "loan" for purposes of § 523(a)(8).

In the Response, TU relies largely on the Sixth Circuit's decision in *Andrews University v. Merchant (In re Merchant)*, 958 F.2d 738 (6th Cir.1992). In *Merchant* the student obtained an educational loan from a bank in connection with a program arranged by the university. The program gave the bank full recourse against the university in the event the student defaulted. In addition, the student signed promissory notes payable to the university in exchange for assistance with educational expenses. *See id.* at 739. After graduation, the student defaulted on both obligations. The university paid the bank and took assignment of the note, becoming the sole creditor for the educational expenses. The student filed for bankruptcy under chapter 7. The university claimed both the educational loan made by the bank and the credit for educational expenses extended by the university were excepted from discharge under § 523(a)(8). The bankruptcy court held that neither obligation fell within exception to discharge, and the district court affirmed on appeal. *See id.*

After determining that the bank loan was nondischargeable, the circuit court turned its attention to the credit extensions made by the university. The court adopted the *Grand Union* definition of "loan" and held that the credit extensions qualified as educational loans for the purposes of § 523(a)(8). The *Merchant* court determined that credit extensions qualify as student educational loans when the following elements are present: (1) the student was aware of the credit extension and acknowledges the money owed; (2) the amount owed was liquidated; and (3) the extended credit was defined as sum of money due to a person. *See id.* at 741.

TU argues forcefully that the Court should adopt the reasoning of *Merchant* and its progeny.[3] However, *Merchant* is clearly distinguishable from the present case. In *Merchant* the student signed promissory notes evidencing her obligation to the university. In the present case, Ms. Ray signed only the Enrollment Cards, which contain no reference to loans, credit extensions, or similar transactions. At the time the Enrollment Cards were signed, TU did not contemplate the making of a loan to Ms. Ray; pursuant to its policies, all amounts owed by Ms. Ray were due and payable in full prior to the first day of classes. Additionally, unlike the promissory notes in *Merchant*, the Enrollment Cards do not state an amount owed by the student.[4] The amounts that Ms. Ray sup-

---

3. TU cites a number of other cases in support of its position. The court finds these cases to be similarly distinguishable from the present case. *See United States Dept. of Health and Human Servs. v. Smith*, 807 F.2d 122, 123 (8th Cir.1986) (medical student signed grant application requiring him to practice medicine in a particular region or repay cost of grant); *Roosevelt Univ. v. Oldham (In re Oldham)*, 220 B.R. 607, 609 (Bankr.N.D.Ill.1998) (students registering under employer-sponsored tuition reimbursement program required by creditor to sign promissory notes promising to pay tuition cost whether or not student received reimbursement from employer); *Missouri Baptist College v. Johnson (In re Johnson)*, 215 B.R. 750, 751 (Bankr.E.D.Mo. 1997) (student signed promissory note evidencing liquidated amount of credit extended

by college); *Stone v. Vanderbilt Univ. (In re Stone)*, 180 B.R. 499, 500 (Bankr.M.D.Tenn. 1995) (student executed promissory note to university for liquidated amount); *Univ. of New Hampshire v. Hill (In re Hill)*, 44 B.R. 645, 646 (Bankr.D.Mass.1984) (student was aware of the terms of credit extended by the university and the amount of the obligation was certain); *Dep't of Mental Health v. Shipman (In re Shipman)*, 33 B.R. 80, 82 (Bankr. W.D.Mo.1983) (debt owed by nursing student as a result of work study program held dischargeable due to fact that funds were used for food and housing, rather than direct educational costs).

4. Indeed, the amount which any student may owe TU is not fixed at the time he or she signs an Enrollment Card. Each student is free to

posedly agreed to pay were clearly unliquidated when she signed the Enrollment Cards.

TU argues that "Congressional history clearly indicates Congress' intent to except from discharge student loan obligations such that future students could benefit from these programs and services." *Response* at 25. This argument, while sound, is applicable only to loans of money, and not mere extensions of credit.

Congress in its original enactment and through its subsequent modifications of § 523(a)(8) has manifested a specific concern for the financial integrity of educational loan programs undoubtedly because the fiscal burden of student default falls upon the federal government and thus, ultimately on the taxpayers. Such a consequence is hardly equitable. The defaulting student is the one party who enjoys the benefits of the education obtained, the pool of funds available for other would-be students is potentially imperiled, and neither the taxpayers nor the other students are in a position to prevent the loss. Thus, the Congressional determination to except government made, insured, or guaranteed financial assistance from discharge is a sensible one.

By contrast, the debt owed to SHU for unpaid tuition in the instant case is materially indistinguishable from the medical doctors, hospitals and other creditors listed in the Debtor's schedules, who all provided goods or services and expected to be paid. There is no overriding policy that warrants treating SHU differently from any other creditor.

*Seton Hall Univ. v. Van Ess (In re Van Ess)*, 186 B.R. 375, 379 (Bankr.D.N.J. 1994). In the present case, there was no loan program in place that was insured or guaranteed by the government, nor was there a pool of funds set aside for other students that was diminished by Ms. Ray's failure to pay her tuition. The policy reasons for holding student loan obligations nondischargeable are not present here.

■ TU also argues that, by attending classes, Ms. Ray received an "educational benefit" for purposes of § 523(a)(8). The Court does not dispute that Ms. Ray received a benefit from her education; however, that fact is not sufficient to render a debt nondischargeable. Section 523(a)(8) excepts from discharge those "obligation[s] to repay *funds received* as an educational benefit." (emphasis added). The section only applies in those situations where funds were actually advanced to a student. *See George Washington Univ. v. Pelzman (In re Pelzman)*, 233 B.R. 575, 577 (Bankr. D.C.1999) ("The language of the statute is plain that funds must be received in order to fit into this criterion of nondischargeability"); *see also Dakota Wesleyan Univ. v. Nelson (In re Nelson)*, 188 B.R. 32, 33 (D.S.D.1995) (debt dischargeable where neither university nor any governmental unit provided funds to debtor in order for her to obtain education benefit).[5] In the

---

add or delete classes from their Enrollment Card prior to the start of classes. Because tuition is calculated based upon the number of credit hours in which a student is enrolled, the student's fees would necessarily change as classes are added or deleted. At least one of the Enrollment Cards provided by Ms. Ray indicates she made changes to her class schedule after initially completing the card, causing a change in the number of hours in which she was enrolled, and thus a change in the amounts which she owed to TU.

**5.** TU cites *Najafi v. Cabrini Coll. (In re Najafi)*, 154 B.R. 185 (Bankr.E.D.Pa.1993) as authority for the premise that permitting a student to enroll in and attend classes without paying tuition is sufficient to establish the existence of a loan for purposes of § 523(a)(8). However, the *Najafi* court relied upon *Shipman* and *Merchant*, *supra*. Because those cases are

present case, TU did not advance funds to Ms. Ray in connection with her execution of the Enrollment Cards; it merely allowed her to attend classes. As a result of this fact, the argument advanced by TU must fail.[6]

## Conclusion

The Court concludes that Ms. Ray's debt is neither a loan nor an obligation to repay funds received as an educational benefit within the confines of § 523(a)(8). The Motion for Partial Summary Judgment filed by Trisza Leann Ray, Plaintiff herein, is granted. The Cross–Motion for Summary Judgment filed by the University of Tulsa is denied.

A separate judgment consistent with this Memorandum Opinion is entered concurrently herewith.

## JUDGMENT

THIS MATTER comes before the Court pursuant to the Motion for Partial Summary Judgment filed by Trisza Leann Ray, Plaintiff herein, and the Response to Motion for Partial Summary Judgment and Cross–Motion for Summary Judgment (the "Response") filed by the University of Tulsa. The issues having been duly considered and a decision having been duly rendered, for the reasons set forth in the Memorandum Opinion filed concurrently herewith,

IT IS HEREBY ORDERED that the Plaintiff's Motion for Partial Summary Judgment and Brief in Support filed February 9, 2001, by Trisza Leann Ray, be, and the same hereby is, granted.

IT IS FURTHER ORDERED that The University of Tulsa's Combined Response to Plaintiff's Motion for Partial Summary Judgment, Cross–Motion for Summary Judgment and Brief in Support be, and the same hereby is, denied.

IT IS FURTHER ORDERED that the Obligation of Trisza Leann Ray to the University of Tulsa, as that term is defined in the Memorandum Opinion, is not a "loan" or an "obligation to repay funds received as an educational benefit" under the provisions of 11 U.S.C.A. § 523(a)(8).

distinguishable from the case at bar, the Court finds TU's argument unpersuasive.

**6.** In support of its position, TU relies upon the unpublished decision in *The University of Tulsa v. Wright (In re Wright),* Adv. Proc. No. 92–0314–W, in which the Honorable Mickey D.

Wilson found that a debt for unpaid tuition was excepted from discharge pursuant to § 523(a)(8). For all of the reasons set forth in this Memorandum Opinion, this Court respectfully disagrees with the holding of *Wright.*