# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 03-1557

IN RE:

SANDRA ANN CHAMBERS,

*Debtor-Appellee,*

APPEAL OF:

SYLVIA MANNING, not individually,
but in her capacity as Chancellor of
the University of Illinois at Chicago.

———————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 02 C 8834—**Joan Humphrey Lefkow**, *Judge.*

———————

ARGUED SEPTEMBER 3, 2003—DECIDED NOVEMBER 4, 2003

———————

Before RIPPLE, ROVNER and DIANE P. WOOD, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Sandra Ann Chambers filed for
Chapter 7 bankruptcy relief. After receiving a discharge, Ms.
Chambers brought an adversary proceeding against Sylvia
Manning, not individually but in her capacity as Chancellor
at the University of Illinois at Chicago ("UIC"), seeking
declaratory relief that her unpaid student tuition and related
debt was discharged. After a hearing on cross motions for

summary judgment, the bankruptcy court concluded that the debt was not excepted from discharge as an educational loan. *See* 11 U.S.C. § 523(a)(8). The court therefore granted summary judgment to Ms. Chambers and declared the debt discharged. Chancellor Manning appealed the bankruptcy court's decision to the district court. That court affirmed the decision of the bankruptcy court. For the reasons set forth in the following opinion, we now affirm the judgment of the district court.

# I

# BACKGROUND

Ms. Chambers attended UIC from 1993 until May of 1999 to pursue a master's degree. While at UIC, Ms. Chambers incurred tuition and related fees under an open student account. Her final account balance was $1,118.77, plus accruing interest.[1] Ms. Chambers failed to pay this amount.

In October 1999, Ms. Chambers filed a voluntary petition for Chapter 7 bankruptcy relief. In connection with the bankruptcy, Ms. Chambers listed UIC as a creditor and included the account balance on her bankruptcy schedules as a pre-petition unsecured claim. The Chapter 7 trustee later designated Ms. Chambers' bankruptcy a "no asset" case, and in January 2000, Ms. Chambers received a discharge of her debts. After the discharge, Ms. Chambers was unable to obtain her transcripts and other papers from UIC. University officials notified her that UIC considered the account balance due and owing despite the bankruptcy discharge.

---

[1] The account statement from UIC showed charges for an open balance, tuition, an S-T-S fee, a health services fee, a general fee and a service fee.

In response, Ms. Chambers filed an amended complaint against Chancellor Manning in her official capacity, in which she sought declaratory relief that the debt did not qualify as an educational loan excepted from discharge under § 523(a)(8).[2] Chancellor Manning filed a motion to dismiss, which the bankruptcy court converted into a motion for summary judgment. Ms. Chambers filed a cross motion for summary judgment. After a hearing, the bankruptcy court granted summary judgment to Ms. Chambers.

The bankruptcy court concluded that the § 523(a)(8) discharge exception did not extend to Ms. Chambers' account balance at UIC. Although Chancellor Manning argued that the debt was the substantive equivalent of a loan, the bankruptcy court noted that the majority of courts to consider this issue had rejected such an expansive interpretation of the term "loan." It noted that the leading case on the issue, *Cazenovia College v. Renshaw (In re Renshaw)*, 222 F.3d 82, 89-

---

[2]  Ms. Chambers originally filed an adversary complaint against UIC, in which she sought a hardship discharge pursuant to 11 U.S.C. § 523(a)(8). This complaint was dismissed on 11th Amendment grounds. Ms. Chambers' current action against Chancellor Manning in her official capacity requests injunctive relief.  She may therefore proceed under *Ex parte Young*, 209 U.S. 123 (1908). *See Ameritech Corp. v. McCann*, 297 F.3d 582, 587 (7th Cir. 2002) (noting that the critical issue in determining whether an action for declaratory judgment falls under *Ex parte Young* doctrine is " 'whether the declaratory judgment imposes upon the State a monetary loss resulting from a *past* breach of a legal duty on the part of defendant state officials' " (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 282 (1997))). This case does not confront the abrogation of sovereign immunity issue addressed in *Hood v. Tennessee Student Assistance Corp. (In re Hood)*, 319 F.3d 755 (6th Cir.), *cert. granted*, 2003 WL 21134036 (U.S. Sept. 30, 2003).

90 (2d Cir. 2000), held that an extension of credit should qualify as a loan under § 523(a)(8) when a contract to transfer money, goods, or services is reached *prior to or contemporaneous with* the transfer. The bankruptcy court found the *Renshaw* analysis consistent with Congress' use of the term "loan." Accordingly, applying this standard, the bankruptcy court found no evidence of intent by either party to enter into a loan arrangement; rather, the debt arose from Ms. Chambers' failure to pay the tuition and expenses when due.

The bankruptcy court therefore declared the debt discharged. On appeal, the district court affirmed the bankruptcy court. Chancellor Manning timely appealed to this court.

## II

## DISCUSSION

### A.  Section 523(a)(8)

The primary purpose of bankruptcy discharge is to provide debtors with a fresh start. *O'Hearn v. Educ. Credit Mgmt. Corp. (In re O'Hearn)*, 339 F.3d 559 (7th Cir. 2003). Congress has decided, however, that some public policy considerations override the need to provide the debtor with a fresh start, and it has excluded certain debts from discharge. Unpaid student loans are among those debts excluded from discharge. The student loan exception is codified in the Bankruptcy Code at 11 U.S.C. § 523:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> ***

(8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend . . . .

11 U.S.C. § 523(a)(8).

The current version of § 523(a)(8) is significantly broader than the exception originally enacted. In 1978, Representative Alan Ertel sponsored the amendment creating the original § 523(a)(8). He stated in debate that "the purpose of this particular amendment is to keep our student loan programs intact." 124 Cong. Rec. H1791 (daily ed. Feb. 1, 1978). Representative Ertel noted that by allowing dischargeability of student loans "we are penalizing students who are coming along through the system." *Id.* at H1792. Legislators debating the merits of the exception from discharge similarly discussed concerns with the funding of the student loan program. *Id.* at H1792-98. As enacted, the original exception covered debt "to a governmental unit, or a nonprofit institution of higher education, for an educational loan" unless the loan became due more than five years before the date on which the petition was filed. Pub. L. No. 95-598, § 523(a)(8), 92 Stat. 2549, 2591, 11 U.S.C. § 523(a)(8) (1978).

Despite this original focus on student loan programs, Congress has consistently expanded § 523(a)(8). The legislative developments are thoroughly explored in *Johnson v. Missouri Baptist College (In re Johnson)*, 218 B.R. 449, 453-54 (BAP 8th Cir. 1998), and are also discussed in *Renshaw*, 222 F.3d at 87-88. In brief, Congress has expanded § 523(a)(8) in the following ways: In 1979, Congress effectively equalized the treatment of loans administered by for-profit educational institutions and non-profit educational institutions by

amending the language of the provision; under the original version, only loans administered by non-profit educational institutions were covered. *See* Bankruptcy Act— Student Loan Debts, Pub. L. No. 96-56, § 3(1), 93 Stat. 387 (1979). Also, deferment periods were excluded from the calculation of the repayment period. *See id.* § 3(2). In 1984, Congress amended the language to include educational loans from "nonprofit institutions" rather than only "nonprofit institutions of higher education." *See* Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub. L. No. 98-353, § 454(a)(2), 98 Stat. 333, 375-76. In 1990, Congress expanded the exception to cover educational benefit overpayments and funds received as educational benefits, scholarships, or stipends, *see* Federal Debt Collection Procedures Act of 1990, Pub. L. No. 101-647, § 3621(1), 104 Stat. 4933, 4964-65, and increased the period of non-dischargeability from five to seven years, *see id.* § 3621(2), 104 Stat. at 4965. It also applied § 523(a)(8) to Chapter 13 cases. *See* Student Loan Default Prevention Initiative Act of 1990, Pub. L. No. 101-508, § 3007(b), 104 Stat. 1388, 1388-28. Thus, although concern for the federally guaranteed loan programs provided the original impetus for § 523(a)(8), the exception has consistently expanded to cover other educational debts. With this legislative history in mind, we turn to the merits of this appeal.

## B.  Standard of Review

Disposition of cross motions for summary judgment is reviewed de novo. *See Hoseman v. Weinschneider*, 322 F.3d 468, 473 (7th Cir. 2003); *Ozlowski v. Henderson*, 237 F.3d 837, 839 (7th Cir. 2001) (citing *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998)). All facts and inferences are viewed in the light most favorable to each nonmoving party; summary judgment is appropriate when the record reveals

no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *See Hoseman*, 322 F.3d at 473 (citing Fed. R. Civ. P. 56(c)).

## C.  Interpretation of § 523(a)(8)

The question presented by this appeal is whether an unpaid balance on a student account meets the definition of an educational loan under § 523(a)(8) and is therefore excepted from discharge in bankruptcy proceedings. Exceptions to discharge "are confined to those plainly expressed in the Code . . . and are narrowly construed in favor of the debtor." *DeKalb County Div. of Family & Children Servs. v. Platter (In re Platter)*, 140 F.3d 676, 680 (7th Cir. 1998) (internal citations omitted).

In interpreting statutory provisions, we begin with the language of the statute itself. *See In re Merchant's Grain, Inc.*, 93 F.3d 1347, 1353 (7th Cir. 1996). Section 523(a)(8) excepts from discharge any "debt . . . for an educational loan made . . . by a governmental unit," but the statute leaves the term "loan" undefined. We therefore must turn to the traditional understanding of the term "loan" under common law. *See NLRB v. Amax Coal Co.*, 453 U.S. 322, 329 (1981) ("Where Congress uses terms that have accumulated settled meaning under either equity or the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms."); *In re Clark*, 738 F.2d 869, 872 (7th Cir. 1984) ("Absent a persuasive reason to the contrary, we are to attribute to the words of a statute their common meaning.").

This court has not previously addressed the scope of the term "loan" in § 523(a)(8). The Second and Third Circuits, however, have determined that unpaid student debts like Ms. Chambers' do not qualify as educational loans. *See*

*Boston Univ. v. Mehta (In re Mehta)*, 310 F.3d 308 (3d Cir. 2002); *Renshaw*, 222 F.3d at 82. Their analysis is instructive.

*Renshaw* involved a consolidated appeal of two separate cases. In the first case, *Cazenovia College v. Renshaw*, the student signed a "Reservation Agreement" with the college in which the college agreed to hold a place open for the student, provided he paid amounts due, and agreed not to charge more for tuition than the amount in effect at registration. The student agreed to pay a reservation fee, to pay tuition, room and board for a summer session and an academic year, and to be bound by other payment-related provisions. *Renshaw*, 222 F.3d at 84-85. The student failed to pay the amounts due, but the college nevertheless allowed him to register and to attend classes. *Id.* at 85. The student later filed for bankruptcy and argued that the amount due on his account was dischargeable. *Id.* In the second of the consolidated cases, *The College of Saint Rose v. Regner*, a student regularly paid his tuition until the fall 1993 semester. Despite the nonpayment, the college permitted him to attend without having prepaid fully his tuition. *Id.* After the college contacted him regarding his "past due balance," the student acknowledged the obligation and made payments but did not pay in full. *Id.* After the college obtained a default judgment against him for the amount due, the student filed for bankruptcy and argued that the debt was dischargeable. *Id.*

The Second Circuit in *Renshaw* began its analysis with a discussion of the purpose of 11 U.S.C. § 523(a)(8) and its legislative history. *Id.* at 86-88. Next, it noted that Congress did not define the term "loan," and so it turned to the common law definition articulated in *In re Grand Union Co.*, 219 F. 353, 356 (2d Cir. 1914). The court paraphrased the *Grand Union* definition as follows:

> To constitute a loan there must be (i) a contract, whereby (ii) one party transfers a defined quantity of money, goods, or services, to another, and (iii) the other party agrees to pay for the sum or items transferred at a later date.

*Renshaw*, 222 F.3d at 88. The court explained: "This definition implies that the contract to transfer items in return for payment later must be reached prior to or contemporaneous with the transfer. Where such is the intent of the parties, the transaction will be considered a loan regardless of its form." *Id.* The court also noted, however, that the mere "failure to pay a bill when due does not create a loan." *Id.*

The court then determined that, in both of the cases involved in the consolidated appeal, the colleges could establish nothing more than failure to pay a bill when due. Neither situation met the definition of a loan because neither college agreed to extend credit nor agreed to accept payment at a later date. *Id.* Rather, both students "unilaterally decided not to pay tuition when it came due." *Id.* The court further noted that it could not find a loan "[w]ithout an agreement by the lender to make a transfer in return for a future payment," *id.* at 89, and that tuition that fell due "was not thereby transformed into a loan," *id.* at 90.

The Third Circuit adopted this reasoning in *Mehta*, 310 F.3d at 308. In *Mehta*, Boston University allowed a student to register and to take classes in the fall semester, despite a denial of his federally guaranteed student loan for that semester. *Id.* at 310. After taking the classes, the student incurred delinquent tuition, related costs, and late fees. *Id.* The student then filed a voluntary Chapter 7 petition and argued that the debt to the university was dischargeable. *Id.* The court agreed and found no evidence in the record to allow the court to conclude that the university intended to loan the student the amount of tuition or that the student

understood that to be the university's intent. *Id.* at 314. The court concluded that "awareness of an obligation does not establish that the parties intended a 'loan,' " *id.* at 315, and that the university only needed to have the student sign an agreement evidencing the debt to protect itself, *id.* at 316.

We find persuasive the reasoning of the Second and Third Circuits.[3] Their analysis comports with the statute and with

---

[3] This court recognizes that prior to *Renshaw*, courts employed different analyses when they adjudicated the issue of whether an unpaid debt qualified as an educational loan. In some cases, the courts required money to change hands before a loan was created. *See, e.g.*, *United Res. Sys., Inc. v. Meinhart (In re Meinhart)*, 211 B.R. 750, 754-55 (Bankr. D. Colo. 1997); *New Mexico Inst. of Mining & Tech. v. Coole (In re Coole)*, 202 B.R. 518, 519 (Bankr. D.N.M. 1996). In other cases, the courts emphasized the substance or nature of the transaction. *See, e.g.*, *DePasquale v. Boston Univ. Sch. of Dentistry (In re DePasquale)*, 225 B.R. 830, 833 (BAP 1st Cir. 1998); *Roosevelt Univ. v. Oldham (In re Oldham)*, 220 B.R. 607, 613 (Bankr. N.D. Ill. 1998); *Johnson v. Missouri Baptist Coll. (In re Johnson)*, 218 B.R. 449, 455-57 (BAP 8th Cir. 1998). Some courts required that the student be aware of the debt, that the amount be certain, and that the debt be a sum of money owed in order to find that the parties created a loan. See *Andrews Univ. v. Merchant (In re Merchant)*, 958 F.2d 738, 741 (6th Cir. 1992); *Univ. of New Hampshire v. Hill (In re Hill)*, 44 B.R. 645, 647 (Bankr. D. Mass. 1984). One bankruptcy court emphasized the intent to create a loan as evidenced by a promise of payment. *See Pelzman v. George Washington Univ. (In re Pelzman)*, 233 B.R. 575, 580 (Bankr. D.D.C. 1999).

The court in *Renshaw* examined these cases. In several, the court found support for its position because of facts indicating the presence of a separate agreement to pay later the debt incurred. *Cazenovia Coll. v. Renshaw (In re Renshaw)*, 222 F.3d 82, 90-91 (2d

(continued...)

the principle that exceptions to discharge are construed narrowly in favor of the debtor.

Although the term "loan" can be construed broadly under various dictionary definitions,[4] we look to the common law definition of "loan" as articulated in *In re Grand Union Co.*, 219 F. 353, 356 (2d Cir. 1914), and as paraphrased in *Renshaw*, 222 F.3d at 88. Under this interpretation, nonpayment of tuition qualifies as a loan " 'in two classes of cases'": " 'where funds have changed hands,' or where 'there is an agreement . . . whereby the college extends credit.' " *Mehta*, 310 F.3d at 314 (quoting *Renshaw*, 222 F.3d at 90). The agreement to transfer educational services in return for later payment "must be reached prior to or contemporaneous with the transfer" of those educational services. *Renshaw*,

---

[3] (...continued)
Cir. 2000) (citing, *e.g.*, *Merchant*, 958 F.2d at 740-41; *DePasquale*, 225 B.R. at 833; *Oldham*, 220 B.R. at 609, 611; *Johnson*, 218 B.R. at 457; *Hill*, 44 B.R. at 646-47). The court could not reconcile its analysis with each case, however. Ultimately, it determined that those cases that required a transfer of funds provided too restrictive of a definition. *Id.* at 91 (citing *Meinhart*, 211 B.R. at 754-55; *Coole*, 202 B.R. at 519). It also rejected *Pelzman* and *Merchant*, to the extent those cases were inconsistent, because it was not clear whether a prior or contemporaneous agreement separate from the debt existed. *Id.*

It is important to note that the case law prior to *Renshaw* does not present a single framework for analysis, but is rather an amalgam of attempts to discern the proper interpretation of the term "loan." We find the *Renshaw* analysis most appropriate, and, to the extent prior cases are inconsistent with the analysis adopted here, we respectfully decline to follow them.

[4] *See DePasquale*, 225 B.R. at 832; *Oldham*, 220 B.R. at 612; *Johnson*, 218 B.R. at 456-57.

222 F.3d at 88. This existence of a separate agreement acknowledging the transfer and delaying the obligation for repayment distinguishes a loan from a mere unpaid debt.

As noted by the bankruptcy and district courts, language in another provision of § 523(a) reinforces this interpretation. In § 523(a)(2), a provision designed to prevent the discharge of debts incurred through fraud, Congress excepted from discharge any "extension of credit." 11 U.S.C. § 523(a)(2). This language is not employed in § 523(a)(8). The use of the term "loan" in § 523(a)(8) rather than "extension of credit," as employed in § 523(a)(2), suggests that a narrower set of circumstances is contemplated in § 523(a)(8) than in § 523(a)(2).

Furthermore, although Congress has expanded consistently the scope of § 523(a)(8), it has retained the term "loan." The retention of the term "loan" suggests that Congress has delineated purposefully among the types of educational debts it means to except from discharge.

Although Congress may someday choose to protect any educational "extension of credit," we must conclude that the term "loan" does not reach so far. Expanding § 523(a)(8) to include any "extension of credit" would protect educational resources, but it would impede the debtor's fresh start. Congress, not this court, must grapple with these competing policy considerations.[5]

---

[5] *Cf. Ray v. Univ. of Tulsa (In re Ray)*, 262 B.R. 544, 551 (Bankr. N.D. Okla. 2001) (noting that, in the case of unpaid student tuition, "[t]he policy reasons for holding student loan obligations nondischargeable are not present"); *Seton Hall Univ. v. Van Ess (In re Van Ess)*, 186 B.R. 375, 379 (Bankr. D.N.J. 1994) ("There is no overriding policy that warrants treating [the university] differently from any other creditor.").

### D.  Ms. Chambers' Debt

Having adopted the analysis of the Second and Third Circuits, we now must determine whether Ms. Chambers' debt to UIC constitutes a loan.

Employing the *Renshaw* framework, we must conclude that no loan occurred. No funds changed hands, nor is there evidence of a prior or contemporaneous agreement to pay tuition at a later date in exchange for an extension of credit. Rather, Ms. Chambers incurred a debt on an open student account, attended classes in spite of the debt and failed to pay her bill. Her situation is indistinguishable from those involved in *Mehta* and *Renshaw. See Mehta*, 310 F.3d at 314 (noting that student " 'unilaterally decided not to pay tuition when it came due' " (quoting *Renshaw*, 222 F.3d at 88)). Chancellor Manning argues that "objective manifestations"—Ms. Chambers' awareness of the debt and class attendance—provide evidence of an agreement by Ms. Chambers to pay tuition at a later date. These manifestations are not, however, evidence of a separate agreement showing intent to create a loan (such as a promissory note, other written agreement, or oral promise). Rather, these "manifestations" are the basic incurrence of the debt.

Because Chancellor Manning has not presented evidence sufficient to sustain the inference of a loan, summary judgment was appropriately granted. No educational loan within the meaning of § 523(a)(8) existed between UIC and Ms. Chambers, and the discharge in bankruptcy extinguished Ms. Chambers' indebtedness to UIC.

This decision does not leave educational institutions without the ability to protect their financial relationships with their students. Educational institutions may avoid the situation presented in this case by taking simple precautions. When students fail to pay tuition bills on time, institutions can withhold educational services until payment, or

they can enter into a separate agreement with the student to accept later payment. A separate agreement to accept later payment would create a loan and would be excepted from discharge under § 523(a)(8). *See Mehta*, 310 F.3d at 316.

### Conclusion

Ms. Chambers' unpaid student account balance did not qualify as an educational loan under § 523(a)(8) and therefore was discharged in the bankruptcy proceedings. The bankruptcy court properly granted summary judgment to Ms. Chambers for this reason, and the judgment of the district court sustaining that decision is affirmed.

AFFIRMED

A true Copy:

       Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*